[DEVISE OF LANDS CHARGED WITH THE PAYMENT OF DEBTS.]

Potter, Appellant, *against* Gardner and others, Respondents.

A devise: "I give and devise to my beloved son, E. W. G., two third parts of that my *Ferry Farm*, so called," &c. "to him, the said E. W. G., and to his heirs and assigns for ever, he, my said son E. W. G. paying all my just debts out of said estate. And I do hereby order, and it is my will, that my son E. W. G. shall

pay all my just debts out of the estate herein given to him as afore-
said," creates a charge upon the estate in the hands of the devisee.

A *bona fide* purchaser, who pays the purchase money to a person au-
thorized to sell, is not bound to look to its application, whether in
the case of lands charged in the hands of an heir or devisee with
the payment of debts, or lands devised to a trustee for the payment
of debts.

But if the money be misapplied by the devisee or trustee, with the
co operation of the purchaser, he remains liable to the creditors
for the sum so misapplied.

On a bill filed by an executor against a devisee of lands charged with
the payment of debts, for an account of the trust fund, &c. the
creditors are not indispensable parties to the suit. The fund may
be brought into Court, and distributed under its direction, accord-
ing to the rights of those who may apply for it.

THIS cause was argued by the *Attorney General* and Mr. *Feb. 2d.*
*Potter* for the appellant, and by Mr. *Webster* and Mr. *D. B.*
*Ogden* for the respondents.

Mr. Chief Justice MARSHALL delivered the opinion of the *Feb, 9th.*
Court.

This is an appeal from a decree of the Court of the Uni-
ted States for the First Circuit in the District of Rhode
Island. The case was this:

On the 7th of July, 1817, Peleg Gardner made his last
will, in which, among other things, he devised as follows: "I
give and devise to my beloved son Ezekiel W. Gardner two
third parts of all that my ferry farm, so called," &c. "to
him the said Ezekiel W. Gardner, and to his heirs and as-
signs for ever, he, my said son Ezekiel W. Gardner, paying all
my just debts out of said estate. And I do hereby order, and
it is my will, that my son Ezekiel W. Gardner shall pay all
my just debts out of the estate herein given to him as afore-
said." The testator gives to his wife, the plaintiff, Hannah,
a part of his real and personal estate for life, in lieu of dower,
and to his daughter, the other plaintiff, other parts of his
real and personal estate.

Peleg Gardner died soon after the making of his will, and
his several devisees entered into the estates devised to them
respectively.

On the 13th of July, 1818, the Court of Probates for the

*1827.*

Potter
v.
Gardner

county, in pursuance of a statute made for that purpose, appointed commissioners to receive and examine the claims of the creditors, who made a report on the 10th day of July, 1820, from which it appears that the debts proved against the estate and allowed. amount to $7593 14 cents, exclusive of a claim of $1000 exhibited by one Mann. which was disallowed, and for which a suit has been commenced against the executrix.

The testator had devised the remaining third part of his ferry estate to his daughter Isabel who had sold and conveyed the same to her brother Ezekiel. After which Ezekiel agreed to sell the whole estate to the appellant, Elisha R. Potter, for the amount of $15.000.

This bill is filed by the executrix and devisees of Peleg Gardner, to subject the purchase money of the ferry estate to the payment of the testator's debts. The decree of the Circuit Court was in favour of the plaintiffs below; and from that decree Elisha R. Potter has appealed to this Court.

The bill contains many charges of fraudulent combination between Ezekiel W. Gardner, and Elisha R. Potter, which it would be waste of time to review in detail, because they are not sustained, and because the case rests on principles of equity, which are believed to be well settled.

The first objection made to the decree is, that the plaintiffs have no right to ask the aid of a Court of equity, because they cannot assert the claims of the creditors who could have proceeded at law against the estate in the hands of Ezekiel, and may now proceed at law against the remaining estate of Peleg. That the plaintiffs can give no discharge which will extinguish the rights of the creditors, and that the creditors ought, for that reason, to have been made parties to the suit.

The creditors not indispensable parties.

The bill states, and so is the fact, that the whole estate of Peleg Gardner, both real and personal, was disposed of by his will; and, as the ferry estate devised to Ezekiel was the fund provided for the payment of his debts, his devisees and legatees took immediate possession of the property bequeathed to them respectively, and nothing remains in the hands of the executrix wherewith to satisfy the creditors. The

bill also states, that Ezekiel W. Gardner is insolvent, or in very doubtful circumstances; that a considerable part of the purchase money has been applied to the payment of his own debts, and that the plaintiffs have cause to fear that the residue will be misapplied in the like manner, so that the whole trust fund will be wasted, and the property bequeathed to them be taken by the creditors. These allegations are not controverted, and make, we think, a very clear case for an application to a Court of equity. It is true, that the creditors might have been made parties defendants, but we do not think them parties who may not be dispensed with. So much of the fund as yet remains may be brought into Court, and may be distributed according to the rights of those who may apply for it. We have, then, no doubt of the jurisdiction of the Court.

We have as little doubt of the liability of the ferry estate while in the hands of Ezekiel, to the creditors of the testator. The words of the will create an express charge. " I give and devise to my beloved son, Ezekiel W. Gardner, and his heirs, for ever, two thirds of my ferry farm, he paying all my just debts out of said estate." More explicit words could not have been used. It is admitted by the counsel for the appellant, that these words would charge the estate in a country where the law did not previously charge it; but since, in Rhode Island, lands are liable, by law, to the debts of the testator, the will superadds nothing to this legal charge.

It may be admitted, that, as between the devisee and the creditor, no charge is superadded by the will; but the relation of the devisees to each other is materially affected by it. A testator cannot, by his will, withdraw from his creditors any property which the law subjects to their claims, but he may provide a particular fund for his debts, and if the creditors resort to a different fund, those to whom the property so taken by them was given, are entitled to compensation out of the fund provided for debts. Examples of this principle abound in the books. Personal property is universally liable for debts. If the particular fund provided by the testator for that object, be of that description, and a specific thing, bequeathed to another, be taken in exe-

The testator's debts charged upon the ferry estate in the hands of the devisee, Ezekiel G.

Effect of the local law of Rhode Island upon the charge created by the will.

1827.

Potter
v.
Gardner.

cution by a creditor, it has never been doubted, that the legatee whose property has been taken, may resort to the trust fund for compensation. The principle is too well set- tled to be now a subject for discussion. The law of Rhode Island, then, subjecting lands to the payment of debts. can have no influence on the case before the Court. The ferry estate, had it remained in the possession of the devisees, would not only have been liable to the creditors, but would have been liable to the other devisees and legatees, for such portions of their property as had been applied in pay- ment of the debts of the testator. .

Question whe-
ther the estate
remained so
charged in the
lands of the
purchaser.

What change has been made by the sale to Elisha R. Potter?

Although this question has been argued with great earnest- ness, and at considerable length, scarcely any real difference exists between the parties. The appellees seem to yield to the authority of those modern decisions which deny the dis- tinction between lands charged in the hands of an heir, or devisee, with the payment of debts, and lands devised to a trustee for the payment of debts. They admit, that, in either case, the purchaser who pays the purchase money to the person authorized to sell, is not bound to look to its ap- plication. But they contend, that if the purchase money be misapplied with the co-operation of the purchaser, he re- mains liable to the creditors for the sum so misapplied. The counsel for the appellants assent to this proposition. It is scarcely necessary to say, that so much of the purchase mo- ney as remained unpaid when this suit was instituted, is lia- ble to the creditors, and is applicable by the Court to the purposes of the trust. What, then, is really in dispute be- tween the parties? Nothing but the questions how much of the purchase money remains unpaid, and how much of it has been applied to the debts of Ezekiel, with the co-ope- ration of Mr. Potter.

The whole purchase made by Mr. Potter amounted to 15,800 dollars, of which 15,000 dollars were given for the ferry estate, and 800 for a lot in Jamestown, purchased by Ezekiel from his sister Isabel. One third of the ferry estate had also been purchased by Ezekiel from Isabel, so that 5,800 dollars of the whole purchase money was given

.for property not charged by the will of Peleg Gardner with his debts, and the remaining 10,000 dollars for property which was so charged. That sum constituted the trust fund.

In the arrangement between the parties, Mr. Potter retained 3,500 dollars for a debt due to himself, and paid debts due from Ezekiel, to the amount, as stated in the answers, of 1,830 dollars, making, in the whole, 5,330 dollars. On a subsequent agreement between the parties, Potter paid a debt of Ezekiel, amounting to 800 dollars; so that Potter has himself paid the debts of Ezekiel to the amount of 6,330 dollars, being 330 dollars out of the trust fund. His cash payments, at that time, are stated at 318 dollars 66 cents.

In June, 1820, the parties came to a settlement, when a balance of 7,729 dollars 62 cents, was found to be in the hands of Potter, for which he says, he gave his note, payable to order, in good mortgages in South Kingston, or in the State of New-York; and a negotiable cash note, payable to the defendant's order, for 4000 dollars, on the 25th of March, 1822.

The cash payments stated by the defendants, amount to 4,318 dollars 64 cents. The residue of the purchase money has either been applied by Potter himself to the payment of Ezekiel's debts, or is comprehended in the note payable in mortgages, or remains in his hands unaccounted for. In either case, it is liable, so far as it exceeds the sum of 5,800 dollars, which is not charged by the will, to the creditors of Peleg Gardner. This Court does not enter into minute calculations to ascertain the precise sum due. An account, if it be found necessary, comprehending the necessary calculations of interest, may be taken in the Circuit Court. The note payable in mortgages is not alleged to be paid, and, not being negotiable, would pass to an assignee, subject to the equity which was attached to it when in the hands of Ezekiel W. Gardner.

The defendant, Elisha R. Potter, has been stated to be liable for the debts of Peleg Gardner, for so much of the purchase money of the trust estate as remains in his hands. So far he is liable directly and immediately, and is properly

decreed to pay the money into Court. But, so far as he has applied the money to the debts of Ezekiel, his responsibility is not, we think, immediate, but depends on the failure of Ezekiel to pay ; the decree ought, in the first instance, to be against Ezekiel, and, if the money cannot be obtained from him, then against Elisha R. Potter.

No doubt exists of the right of any of the parties to contest the claim of any creditor. The report of the commissioners may be *prima facie*, but is not conclusive evidence of the claim. The creditor may ascertain his debt by a suit in the State Court, or the executrix may contest it in the Court of the United States. If Elisha R. Potter, or Ezekiel W. Gardner, suppose the executrix to be unfaithful to her duty in this respect, the Court will permit either of them to use her name in opposition to the claim.

We are of opinion, that so much of the decree as may subject Elisha R. Potter to the debts of Peleg Gardner, beyond the purchase money remaining in his hands, and beyond the money paid by him in discharge of the debts of Ezekiel W. Gardner, after deducting therefrom the amount of the estates purchased by the said Ezekiel from his sister Isabel, ought to be reversed, and that, in all other things, it ought to be affirmed.

DECREE. This cause came on, &c. On consideration whereof, this Court is of opinion, that there is error in so much of the decree of the said Circuit Court as subjects Elisha R. Potter to the payment of a larger sum of money than now remains in his hands of the original purchase money, added to the sum he has applied to the payment of the debts of Ezekiel W. Gardner, after deducting therefrom the amount given for the estates purchased from Isabel Gardner ; and in so much of the said decree as directs the said Elisha R. Potter to pay the sums he has misapplied to the debts of Ezekiel W. Gardner, and for which he, the said Ezekiel, is liable in the first instance, before he, the said Ezekiel, shall have fail 1 to pay the same. It is, therefore, the opinion of this Court, that so much of the said decree as is contrary to this opinion, be RE-VERSED and ANNULLED, and that the same be in all other

respects, AFFIRMED; and the cause is remanded to the said Circuit Court, with directions to reform the said decree according to this opinion, and to do all other things therein as equity and justice may require. In taking any account between any of the parties which may be necessary for giving effect to this order, interest is to be computed according to law and usage.