# Richmond.

## REDFORD AND OTHERS v. CLARKE AND OTHERS.

### January 23, 1902.

1. TRUSTS AND TRUSTEES—*Purchasers—Application of Purchase Money.*—
   A purchaser from a trustee who is invested with a power of sale for
   the purpose of reinvestment is not bound to see to the application
   of the purchase money except where the sale amounts to a breach
   of trust on the part of the trustee, and the purchaser has notice of
   the breach, either from the face of the transaction itself, or other-
   wise. If he has such notice as makes him a party or privy to the
   trustee's misconduct, the property will be affected in his hands
   with the trusts which previously attached to it, otherwise not.

2. LIMITATION OF ACTIONS—*Ejectment—Joint Tenants—Infancy of One*—
   As ejectment lies in Virginia for an undivided interest in realty, the
   infancy of one joint tenant will not prevent the running of the act
   of limitations as to the other joint tenants not under disability.

3. LIMITATION OF ACTIONS—*Express Trusts—Constructive Trusts.*—As a
   general rule, the act of limitations does not run as between trustee
   and *cestui que trust* in *express* trusts, but the rule is otherwise as to
   *constructive* trusts.

4. LIMITATION OF ACTIONS—*Equity Follows the Law.*—In respect to the
   statute of limitations, equity follows the law, and a demand that
   would be barred if asserted in a legal forum will be equally barred
   in equity.

5. LACHES—*Lapse of Time—Death of Parties—Loss of Papers.*—Even
   where there is no absolute bar from lapse of time, courts of equity
   will not take cognizance of an equitable claim after a great lapse
   of time, and, where, from the death of parties and the loss of
   papers, there is danger of doing injustice, and there can no longer
   be a safe determination of the controversy.

6. LACHES—*Indolent Ignorance.*—He who would repel the imputation of
   laches on the score of ignorance of his rights, must be without
   fault in remaining so long in ignorance of those rights. Indolent
   ignorance and indifference will no more avail than will voluntary
   ignorance of one's rights.

Appeal from two decrees of the Chancery Court of the city of Richmond, pronounced July 21, 1899, and July 12, 1900, in a suit in chancery wherein appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*A. W. Patterson* and *George Bryan,* for the appellants.

*Harvey Wilson,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The demand which appellants seek to establish on this appeal had its origin in a deed executed by Thomas J. Evans, trustee, to John F. Reeve, bearing date July 5, 1851. That deed was based upon another deed, dated September 8, 1846, by which, for a valuable consideration, Peter D. Glenn and others conveyed a lot on Broad street, in the city of Richmond, to Robert B. Watkins, in trust for the sole, separate and only use of Maria Redford, wife of John Redford, during the term of her natural life, and at her death, if said property should not be sold as therein provided, to be conveyed to the children of John and Maria Redford, living at the time of her death—Maria Redford, during the term of her natural life, to take, receive and use for her sole benefit, maintenance and support, the rents, issues and profits of the property, neither the *corpus* nor the issues of which were to be in any manner liable for the debts, claims, or demands of her husband.

Maria Redford was empowered to sell the property at any time during her life, and the trustee, at her request, was required to unite in the deed, the proceeds of sale to be invested in other property, and held by the trustee upon the same trusts.

By the first mentioned deed the property was sold and conveyed to John F. Reeve, and passed by successive sales and

alienations through purchasers for value, without any actual notice of the alleged breach of trust, to Henry Clarke, who took possession November 7, 1854, and he and appellees, his heirs at law, have remained in possession to the present time.

Maria Redford died August 10, 1880. In the year 1898, appellants filed a bill in the Chancery Court of the city of Richmond, to which appellees were made defendants, and in which they sought to have construed the deed of September 8, 1846, to set aside and annul the deed of July 5, 1851, and all subsequent alienations of the Broad-street lot. They prayed for the appointment of a trustee in the place of Evans, who had died, and that the defendants be required to render an account of the rents and profits, and of the use and occupation of the property, and that it be placed in the hands of a receiver and rented out pending the litigation.

The theory upon which appellants rest their claim to the Broad-street lot is that it was sold by Evans, substituted trustee, to John F. Reeve, in consideration of certain debts due from John Redford to Reeve, and in contravention of the trust imposed by the deed of September 8, 1846, which contemplated a sale for reinvestment; that the recitals of the deed of July 5, 1851, showed that fact and affected all subsequent purchasers with notice of the breach of trust, and they thereby became trustees of the property for appellants after the death of their mother, Maria Redford.

There was a demurrer and answer to the bill. In their answer, the defendants repudiate and deny the contention of the plaintiffs in all its aspects. They insist that the deed of September 8, 1846, invested Maria Redford with the absolute power of sale of the property, and imposed no obligation upon purchasers to look to the application of the purchase money. They deny that the sale and conveyance by Evans, trustee, to John F. Reeve was a breach of trust, or that any of the proceeds of sale of the Broad-street lot were applied in payment of

the debts of John Redford, or that the recital in the deed of July 5, 1851, admits of that construction. On the contrary, they exhibit another deed from which it appears that the indebtedness referred to was secured by property derived by Maria Redford from the estate of her father.

They aver that the disposition of the Broad-street lot was in point of fact an exchange with Reeve for a lot on Main street, and produce a deed from Reeve to Evans, trustee, conveying the Main-street lot, substantially upon the same terms as those upon which he held the Broad-street lot.

They deny that Evans had any other trust property of Maria Redford and her children; and demand, if their theory, that the properties were exchanged, is incorrect, that the plaintiffs prove, as a matter within their knowledge, and not within the knowledge or means of knowledge of respondents, from what other source the trustee derived means with which to purchase the Main-street lot.

They also rely upon the act of limitations and upon the staleness of the demand, and laches of the plaintiff in the assertion of their claim, as an absolute bar to their right of recovery.

Upon the hearing, the Chancery Court dismissed the bill, and from that decree this appeal was allowed.

The case presents one phase of the important doctrine as to the liability of a purchaser from a trustee to see to the application of the purchase money.

In England, the mischief, arising from the lengths to which that doctrine had been carried by the courts, was so great as to necessitate interference on the part of Parliament, and an abolition of the rule. 23 and 24 Vict. C. 145, section 29.

The doctrine has never been received with favor in this country (Bish. Eq., section 279); and the disposition of the courts is to so limit its application as to avoid the evils which resulted from the rule of the English courts. See Freeman's note to *Tyler* v. *Herring*, 19 Am. St. Rep. 282-3-4.

In the case in judgment, Maria Redford was invested with an absolute power of sale of the property, and the trustee was required to unite with her in a conveyance to the purchaser, and to invest the proceeds of sale in other property to be held upon the same trusts.

In that class of cases, the prevailing doctrine in the United States and the rule in this State is that a purchaser is not bound to see to the application of the purchase money, except where the sale is a breach of trust on the part of the trustee, of which the purchaser has notice, either from the face of the transaction itself, or otherwise. If he has such notice as makes him a party or privy to the trustee's misconduct, the property will be affected in his hands with the trusts which previously attached to it, otherwise it will not be so affected.

In this case, there was a discretion vested in the trustee to determine in what particular property he would reinvest the fund, a discretion over which the purchaser had no control, and for the due exercise of which, if he acted in good faith, he was not responsible. *Steele* v. *Levisay*, 11 Gratt. 454, 466, 467; *Jones* v. *Clark*, 25 Gratt. 642; *Hughes* v. *Tabb*, 78 Va. 313; *Claiborne* v. *Holland*, 88 Va. 1046; *Elliott* v. *Merriman*, 1 L. C. in Eq. Pt. 1, pp. 109, 119.

But if it be conceded that the recital in the deed of July 5, 1851, did establish and affect purchasers with notice of a breach of trust, in that it informed them that a part of the consideration for the conveyance was certain debts due from John Redford to John F. Reeve (which is by no means clear), it would seem plain that the right of all the appellants to maintain this suit, except the children of Benjamin and Elizabeth Houseman, who were infants at the death of Maria Redford, is barred by the statute of limitations.

Their right accrued August 10, 1880, and suit was not instituted until May rules, 1898, more than seventeen years thereafter.

Section 2915 of the Code provides that "No person shall make an entry on, or bring an action to recover, any land .. .. . but within fifteen years . . . . next after the time at which the right to make such entry or bring such action shall have first accrued."

Appellants maintain that the infancy of one joint-tenant prevents the application of the act of limitations to other joint-tenants not under disability, and authorities are cited to sustain that contention. These decisions, however, proceed upon the common law doctrine that joint-tenants must sue and be sued jointly. But that doctrine can have no application in this jurisdiction, where the common law rule has been modified by statute, and where undivided interests may be sued for and recovered. V. C., ch. 125; *Marshall* v. *Palmer*, 91 Va. 344; *Nye* v. *Lovitt*, 92 Va. 710, 719.

The statute of limitations contains no exception in case of joint-tenants where some are under disability, and there would seem to be no necessity for such an exception, under the statutory modification of the common law rule, which no longer requires that all shall unite in suits affecting the joint property.

Again, it is said that the act of limitations does not run between trustee and *cestui que trust.* This is generally true as to *express trusts*, but the rule is otherwise as to *constructive trusts.*

In the case of *Sheppards* v. *Turpin*, 3 Gratt. 373, this court said, at page 394: "Though there is no express decision of this court upon the exact question before us, authorities, English and American, are abundant to show that the only trusts which are excepted from the operation of the statute of limitations are the technical trusts which fall peculiarly and exclusively within the cognizance of a court of equity; that the equitable exception taking trusts out of the operation of the statute extends only to actual and express trusts as between *cestui que trust* and trustees properly so called; and does not embrace those trusts which are matters of implication and construction; and

that a purchaser for value, of property, the subject of a trust, accompanied by a possession openly and avowedly adverse, even though the purchase were the result of gross fraud and collusion, comes fully within the protection of the statute."

In respect of the statute of limitations, equity follows the law, and a demand that would be barred if asserted in a legal forum will be equally barred in equity. *Rowe* v. *Bentley*, 29 Gratt. 756, 759; *Cole* v. *Ballard*, 78 Va. 139; *Hutcheson* v. *Grubbs*, 80 Va. 251, 257; *Switzer* v. *Noffsinger*, 82 Va. 518; *McCarty* v. *Ball*, 82 Va. 872.

It follows from what has been said that the right of action of all the appellants except the Houseman children is barred; and the latter cannot maintain the suit for the reason that the life estate of their father, Benjamin Houseman, as tenant by courtesy intervenes.

So that, upon these grounds there was no error in the decree complained of.

But the defence of lapse of time and laches is equally conclusive.

The language of this court in the case of *Bargamin* v. *Clarke*, 20 Gratt. 544, is peculiarly applicable to this case: "But, even where there is no absolute bar from lapse of time, it is a principle of courts of equity not to take cognizance of an equitable claim after a great lapse of time, and where, from the death of witnesses and the loss of papers, there is danger of doing injustice, and there can no longer be a safe determination of the controversy."

The transaction which appellants seek to annul took place more than fifty years ago, and not one of the original parties survives. Thomas J. Evans, the trustee, Maria Redford, the life tenant; John Redford, her husband, and John F. Reeve, the purchaser, are all dead; and the records of the courts of Hanover county, which would probably have thrown light on the subject, have been destroyed.

The circumstances tend strongly to sustain the theory of appellees that the conveyance of the Broad-street lot from Evans, trustee, to Reeve, and of the Main-street lot from Reeve to Evans, trustee, were parts of one and the same transaction. But whatever may have been the fact, at this distance of time, when all the parties to the transaction have passed away, it is the plain duty of the court to resolve the doubt in favor of the presumption that the trustee, Evans, discharged his duty, rather than that he was guilty of a breach of trust—an assumption strengthened by the fact that he was a lawyer of character and experience.

The reports of this court abound with decisions which are fatal to the pretensions of appellants.

Thus, in the case of *Tate* v. *Jones*, 98 Va. 544, it was held that where there had been long delay in the institution of the suit, the original transaction has become obscure, parties have died, and evidence has probably been lost, equity will not interfere.

And in the case of *Kavanaugh* v. *Kavanaugh*, Id. 649, it was said: "If from the delay which has taken place it is manifest . . . that any conclusion to which the court can arrive must at best be conjectural, and that the original transactions have become so obscured by time, loss of evidence, and death of parties, as to render it difficult to do justice, a court of equity will not grant relief." *Nelson* v. *Triplett*, 99 Va. 421.

Appellants undertake to relieve themselves from the imputation of laches on the ground that they were ignorant of their rights. But the avenues of information to them and to appellees were the same. They insist that the recitals in the deed of July 5, 1851, affected appellees, who are of that favored class, *bona fide* purchasers for value, with notice—*yet failed to apprise them of their rights.*

One who would repel the imputation of laches on the score of ignorance of his rights must be without fault in remaining so

long in ignorance of those rights. Indolent ignorance and indifference will no more avail than will voluntary ignorance of one's rights. *Craufurd* v. *Smith*, 93 Va. 623, 629, 630; *Rowe* v. *Bentley*, 29 Gratt. 763; *Massie* v. *Heiskell*, 80 Va. 789, 805; 2 Story's Eq. Jur., section 1521a (13th ed.).

In every view of the case the decree of the Chancery Court was right, and ought to be affirmed.

*Affirmed.*