𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

CREED F. CARTER V. JAMES B. KEESLING, ET ALS.

September 22, 1921.

Absent, Burks, J.

1. WILLS—*Construction—Estates—Defeasible Fee.*—A testator de-
vised his residuary estate to his son, with a provision that if
his son and the daughter of his son both should die without
lawful issue living, the property devised to his son should re-
vert to testator's other children.

    *Held:* That the estate vested in the son was a defeasible fee in
the real estate and a defeasible absolute estate in the personal
property, devised and bequeathed by the residuary clause, sub-
ject to be defeated by the death of the beneficiary and his
daughter without issue, upon the happening of which event the
estate, both real and personal, should pass to the other chil-
dren of the testator.

2. WILLS—*Defeasible Fee—Construction of Power to Sell and Con-
vey—Application of Purchase Money—Case at Bar.*—A tes-
tator after giving his residuary estate to his son subject to the
provision that if the son and a daughter of the son should die
without issue the property should go to the other children of
the testator, provided. that the son and his said daughter, if
she shall survive her father and become twenty-one years of
age and become the heir or devisee of her father, shall have
the full power and authority to sell and convey, and invest the
proceeds subject to the provision as to their death without
issue. 

    *Held:* That the power to sell and convey was a power which
could be completely executed during the lifetime of the son,
and a purchaser from the son was under no obligation to look
to the application of the purchase money.

3. TRUSTS AND TRUSTEES—*Bona Fide Purchaser from Trustee—Ap-
plication of Purchase Money.*—Where a sale is made by a trus-
tee under a power to sell and reinvest upon the same trust,
and the trustee is given unlimited discretion as to the kind of
property and as to the time in which reinvestment shall be

made, a *bona fide* purchaser from such trustee, without actual or constructive notice of any breach of trust on the part of the trustee, is under no obligation to look to the application of the purchase money.

4. TRUSTS AND TRUSTEES—*Purchaser from Trustee—Duty Where Trustee Contemplates a Devastavit—Payment into Court.*—A *bona fide* purchaser from a trustee after his purchase discovered that the sale to him by the trustee was for the purpose of enabling the trustee to commit a *devastavit* by the diversion and use of the purchase money to his personal obligations. Under such circumstances, the purchaser occupies the position of a stake holder with respect to the unpaid purchase money, and it was his duty, by interpleader, to convene all persons who might have an interest in such purchase money before the court having jurisdiction of the subject matter and pay the money due into the hands of the court.

5. TRUSTS AND TRUSTEES—*Breach of Trust—Liability of Participant.*—It would seem to be now settled that a party knowingly dealing with a trustee or other fiduciary in such a way as to enable him to commit a *devastavit* will be held liable therefor, although such party himself may pay present money and full value and derive no peculiar benefit as the fruit of the transaction. And certainly this is true where the party himself not merely suspects, but affirmatively states that he knows as an actual fact that the trustee will commit a *devastavit* if he deals with the trustee by paying money belonging to the trust fund into the hands of the trustee.

6. BILL OF REVIEW—*Conditions—Purchaser from Trustee—Payment into Court of Purchase Money.*—A purchaser from a trustee filed a bill of review setting forth that since the decree of the lower court ordering payment of the purchase money to the trustee, by means of after-discovered evidence, he had learned that the trustee contemplated a *devastavit* by applying the purchase money to his personal obligations.

*Held:* That the case presented by the bill of review was one of which it was proper for the court to take jurisdiction, and further that in granting leave to file the bill of review the court had the power to impose the condition upon the purchaser that he should pay into court that portion of the purchase money which was owing, in accordance with his contract of purchase, and past due at the time of the entry of the decree.

7. BILL OF REVIEW—*Leave to File—Error Not Apparent on Face of Record—Conditions.*—It is not necessary to obtain leave of the court to file a bill of review to correct an error of law apparent on the face of the record; but such leave is necessary where

the bill is founded on new matter or newly discovered evidence. The granting of such leave is not a matter of right, but rests in the sound discretion of the court, subject to review; and in granting leave terms may be imposed.

8.  BILL OF REVIEW—*Newly-Discovered Evidence—Extent of Relief.*— It is well, settled that a bill of review filed on the ground of newly-discovered evidence entitles the complainant to relief only to the extent that the newly-discovered evidence, if it had been brought forward in time, should have changed the character of the former decree sought to be reviewed.

Appeal from a decree of the Circuit Court of Smyth county.  Decree for defendants.  Complainant appeals.

*Affirmed.*

On September 1, 1919, the appellant bought of the appellees, James B. Keesling and Edith Keesling Cole, a tract of 509 acres of land and considerable personal property, which constituted portions of a larger amount of land and personal property which were devised and bequeathed to James B. Keesling and Edith Keesling Cole by the residuary clause of the will of the father of the former and grandfather of the latter, one Emory S. Keesling, deceased, duly probated in the year 1915.

The appellant agreed to pay for said property, purchased as aforesaid, the sum of $65,000.00 to be paid as follows: $17,000.00 on the 1st day of January, 1920, and the residue in eight equal installments of $6,000.00 each, to be evidenced by eight negotiable notes dated September 1, 1919, for such amount each, bearing interest from date and payable respectively September 1, 1920, September 1, 1921, September 1, 1922, September 1, 1923, September 1, 1924, September 1, 1925, September 1, 1926 and September 1, 1927.  Deed was to be made by the vendors to the vendee on January 1, 1920, upon the payment of the first

83

payment of $17,000.00 aforesaid, which deed was to reserve a vendor's lien to secure the payment of the said residue of the purchase money.

On September 1, 1919, the vendee executed a deed of trust on certain property belonging to him to secure the payment of said $17,000.00, the first payment aforesaid.

On December 23, 1919, the appellant wrote the attorney for J. B. Keesling the following letter:

"Dear Sir:

"In the matter of my purchase from James B. Keesling and others, I have discovered that the title of the vendor's is not good. I have requested my attorneys to look into it and advise me as to the condition thereof. They have reported to me that the title, in their judgment, is defective and dependent on contingencies which could defeat the title entirely. They have further advised me to say to Mr. Keesling, and, I make this statement to you as his attorney, that I shall be ready and willing to make my first payment on the farm as soon as Mr. Keesling can make me good title, provided this can be done within reasonable time.

"I had made all my plans to complete the purchase of this property, and I regret to find the title in the condition it is.

"Very truly yours,

"C. F. CARTER."

The said $17,000.00 payment was not made on January 1, 1920, and upon request of James B. Keesling, the trustee in said deed of trust advertised for sale the property thereby conveyed.

Thereupon the appellant instituted this suit.

The material portions of the bill are as follows:

"Your complainant would further state that the vendors received their title as devisees (under the will) of Emory

S. Keesling, deceased. That under said will, by the 5th clause thereof, there is this provision:

"But should my son James B. Keesling, and his daughter Edith, both die without lawful issue living, then my will is that the property, both real and personal, which by this clause I have devised to my son James B. Keesling, should revert to my other children, or their descendants,' thereby depriving the vendors of your complainant from having the right at the present time of conveying said property, their title to said property being wholly dependent upon the contingency as to whether James B. Keesling and his daughter Edith should die with or without issue.

"Your complainant would further state that there is a further provision in said will that if Edith Cole, the daughter of James B. Keesling, should survive her father and become twenty-one years of age and become his sole heir or devisee, should have the power to convey said property, but that the purchase money received from such sale should be invested in other property to be held and owned in the same way and subject to the like provisions that if they should both die without issue living at the time of their death, the property hereby devised should revert to the testator's other children. All of which will fully appear from a copy of the will marked exhibit "B," and prayed to be considered as a part of this bill.

"Your complainant would further state upon receiving the opinion of his attorneys that vendors had no right to make a conveyances, that he immediately notified his vendors of the opinion he had received, through a letter dated December 23, 1919, to W. R. D. Moncure, the attorney of vendors, in which letter your complainant stated that he was ready and willing to comply with the terms of the contract provided his vendors could make a good title to the land; all of which will fully appear from a copy of letter herewith filed marked 'Exhibit C.'

"Your complainant would further state that his vendors did nothing to perfect the title, but proceeded to advertise a sale of all the property embraced in the deed of trust, to take place at Marion, as to the real estate on February 14, 1920, and of the personal property embraced in said trust to take place at Cedar Springs, Virginia, on Tuesday, the 17th day of February, 1920; all of which will fully appear from a copy of the advertisement herewith filed, marked 'Exhibit D.'

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Your complainant is advised that a court of equity will not compel him to take this property with the title in the condition it is; that while he is willing and ready and able to comply with his contract, provided the title were good, he ought not to be compelled to pay for property when if certain contingencies occur, that might occur, he would have no title at all to said real estate so contracted for as aforesaid.

"Being without remedy at law and only relievable in equity, the prayer of your complainant is that J. B. Keesling, Edith Cole and W. R. D. Moncure, trustee, may be made parties defendant to this bill and they be required to answer the same, but not under oath, an answer under oath being waived that your honor will enjoin the said W. R. D. Moncure from making the sales as aforesaid, and that your honor will construe the will of Emory S. Keesling as to whether or not the said J. B. Keesling and Edith Cole have the power to convey the said real estate, and to relieve your complainant from being compelled to carry out his contract under the circumstances, and will protect the right of your complainant in the premises; that all proper accounts may be ordered; and that your honor will grant unto your complainant such other, further and more general relief as to equity seems meet and the nature of his case may require; and your complainant will ever pray, etc."

The residuary clause of the will, filed as Exhibit "B," with the bill, the construction of which clause is involved in this suit as aforesaid, is as follows:

"Fifth: I devise and bequeath (subject to my wife's interest in same) to my said son, James B. Keesling all the remainder of my property real and personal, including my farm on which I now reside situated partly in Smyth county and partly in Wythe county, Virginia, but he is to pay my funeral expenses, including suitable monument to my grave. and all the debts, which I owe at the time of my death and he shall also pay the legacies of six thousand dollars ($6,000.00) each to my two daughters as above set forth. But should my said son James B. Keesling and his daughter Edith both die without lawful issue living, then my will is, that the property both real and personal which by this clause, I have devised to my said son James B. Keesling shall revert to my other children or their descendants. But my will is, that notwithstanding the provisions in this clause of my will, that the property shall revert to my other children in the event that my said son, James B. Keesling and his said daughter, Edith, shall die without issue living at the time of their death, the said James B. Keesling and his said daughter, if she shall survive her father and becomes twenty-one years of age, and becomes the heir or devisee of her father, shall have the full power and authority to sell and convey in absolute right the property I have hereby devised and bequeathed to my said son James B. Keesling and to invest the proceeds of such sale in other property, to be held and owned in the same way, and subject to the like provisions that if they should both die without issue living at the time of their death, the property hereby devised by this clause shall revert to my other children, or their descendants."

A preliminary injunction was awarded in accordance with the prayer of the bill on February 13, 1920, and by order entered February 23, 1920, this injunction was enlarged until the further order of court on condition that the complainant execute a bond conditioned according to law, etc., within three days from that date, in the penalty of $6,000.00, and the cause was continued.

On October 26, 1920, the appellee, James B. Keesling, filed his demurrer in writing to the bill, setting forth certain grounds of demurrer, of which only the following need be stated, namely:

"Fourth: The bill and exhibits show that this defendant can convey good title to the lands in the bill and exhibits mentioned.

"Fifth: The plaintiff, as vendee of the lands in the bill mentioned, is under no duty to see to the reinvestment of the purchase money, and therefore has no interest entitling him to ask the court to supervise such reinvestment."

At the same time the appellee, Edith Keesling Cole, demurred in writing to the bill on the following single ground set forth therein, namely:

"Because it appears from the bill and exhibits that she has no interest in the subject matter of the suit and is neither entitled to nor subject to any decree in the premises."

On the same day, October 26, 1920, the court entered the first decree which is under review on this appeal, in which it was decreed that the said demurrer of James B. Keesling to the bill, "upon the fourth and fifth grounds, as set forth in the written demurrer this day filed, is well taken;" and that the court "is of opinion that the defendants, J. B. Keesling and Edith Keesling Cole, under the will of E. S. Keesling, dec'd, can convey good title to the land sold to the plaintiff without any obligation on the part of the plaintiff to see to the application of the purchase money."

And by this decree the injunction theretofore awarded was dissolved and the bill dismissed.

Thereafter, on November 22, 1920, the appellant tendered to the judge of the court below, in vacation, a bill of review and asked leave to file the same and that it might be taken as a bill of review to rehear the final decree entered at the October term of the court, which was the decree of October 26, 1920, aforesaid. And thereupon the defendants James B. Keesling and Edith Keesling appeared by counsel and objected to the filing of the bill of review, and the matters arising upon the motion of appellant to file such bill and the objections of the appellees to the filing of the same were argued by counsel. Whereupon the following decree was entered, which is also under review on this appeal, namely:

"Upon consideration whereof, the court doth sustain the objection of the said defendants to the filing of said bill unless and until the complainants shall pay to H. L. Kent, clerk of the Circuit Court of Smyth county, the sum of $23,000.00, representing the principal of the purchase money notes of the complainants due on the 1st day of January, 1920, and the 1st day of September, 1920, with interest on the said sum of $23,000.00 from September 1, 1919, until so paid, and with interest from September 1, 1919, on $42,000.00, balance of purchase money, to September 1, 1920.

"And the said complainants are given until the 20th day of December, 1920, to pay said sums to H. L. Kent, clerk, as aforesaid.

"It is agreed by counsel for complainants that the amount of purchase money and interest hereinbefore decreed to be paid is now due."

The bill of review just referred to, so far as material to be stated, contained the following allegations:

"1. That, heretofore, your orator has exhibited in your honor's court a bill of complaint against J. B. Keesling, Edith Cole and W. R. D. Moncure, trustee; that process was duly executed on the said defendants, and that they filed their demurrer thereto, and issue was joined thereon; that upon argument of counsel, your honor entered a decree on the 26th day of October, 1920, sustaining the fourth and fifth grounds of demurrer, and dismissing the bill of your orator.

"2. That the object of the bill of your orator was to construe the will of Emory S. Keesling, deceased, and to determine whether or not, under the provisions of the said will, the said James B. Keesling had the right to convey certain land to your orator; that the only evidence adduced before your honor was the will of James B. Keesling, and that, by your honor decreed that J. B. Keesling had the right and power to sell the said land under the will.

"3. That your orator has discovered new matter of consequence and material in said cause, which new matter your orator did not know, and could not, by reasonable diligence have known, so as to make use thereof in this cause."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"5. That, by the fourth clause of said will, the said Emory S. Keesling bequeathed to his two daughters, Carrie K. Lantz and Minnie Cornett, the sum of $6,000 each, with interest from the time of his death, to be paid by James B. Keesling.

"6. That, after the death of Emory S. Keesling, the said James B. Keesling filed a bill in your honor's court, under the name and style of *Jas. B. Keesling, et al.,* v. *Theresa A. Keesling and others*, asking, among other things, that the

will of James B. Keesling be so construed as to permit him,
the said James B. Keesling, to sell the property devised
him, or so much thereof as may be necessary, for the purpose of paying off the legacies to Mrs. Carrie K. Lantz and
Minnie K. Cornett, and also to pay $6,000.00 agreed upon
between Theresa A. Keesling and James B. Keesling as the
value of the dower interest of Theresa A. Keesling in the
property devised to J. B. Keesling, the said Theresa Keesling being the widow of Emory S. Keesling, deceased.

"7. That your honor, by decree entered in said cause on
the 17th day of December, 1917, and herewith filed as exhibit
"Decree" expressly held and decreed that the legacies of
Carrie K. Lantz and Minnie K. Cornett were personal obligations of J. B. Keesling, and that the prayer of the said
bill that the said J. B. Keesling be permitted to sell the real
estate devised to him for the purpose of paying those legacies of $6,000 each, and the amount due the widow, Theresa
Keesling, be denied.

"8. That, therefore, by the said decree, your honor expressly denied to J. B. Keesling the right to sell said property
for the purpose of paying the debts and legacies, but did not
deny him the right to sell for the purpose of reinvestment,
and that your honor's decree in the last-named respect, viz:
Granting him the right to sell, or rather construeing the
will to the effect that he could sell and convey, for the purpose of reinvestment as provided by the will, was upheld
and affirmed by your honor in the last decree in this cause.

"9. Your honor has decreed that James B. Keesling has no
right under the will to sell the said real estate for the purpose of paying the legacies, and the amount due Theresa
A. Keesling.

84

"Your orator alleges that James B. Keesling has sold a large amount of the said real estate, and in direct defiance of the terms of the will of his father, Emory S. Keesling, and of your honor's court, has applied the proceeds to the payment of said legacies.

"That your orator alleges that in contravention of the terms of the will of Emory S. Keesling, the said James B. Keesling has sold a large amount of said property, and has appropriated the proceeds to his own personal use, and paid his own personal debts therewith.

"That your orator is advised that it is not the intention of the said James B. Keesling to invest the proceeds of the sale to your orator as provided by the will, but on the contrary, to appropriate the same to his own personal use.

"10. That the said James B. Keesling has advertised and sold a large amount of acreage of the farm devised to him by his father, under the power of sale conferred upon him, and that he has not invested the proceeds as required by the will, on the contrary, has paid his personal obligations therewith  *  *  *  to-wit the legacies, etc.

"11. That your orator, purchaser of the property in the bill and proceedings mentioned, knows these facts. That he has learned since the institution of this suit that they exist. That he could not have learned them by using ordinary diligence before he did, and he, knowing personally the wrongful use which has been made of the proceeds of the sale of this property, and knowing that the proceeds of sale have been and will be diverted from the channel in which they are legally required to be placed, to the possible detriment of the contingent legatees and devisees under said will, does not know whether he can safely pay the purchase money for said property to James B. Keesling.

"12. That James B. Keesling is the executor of the will of his father, with power of sale, under the decision of your honor's court. That the property devised to him, upon the happening of a contingency, viz.: That both he and his daughter die without issue living, reverts to the other children of Emory S. Keesling, and their descendants, and that it is his duty, known to your orator, if he exercises the power to sell, to reinvest the proceeds as commanded by the will under which he acts, and since your orator knows that that duty has not been complied with, he asks that the money which he pays be required to be invested under the terms of the will, or that the said James B. Keesling, executor with power to sell, execute sufficient bond to properly execute his executorship.

"13. Your orator is willing, ready and anxious to carry out his contract, in the bill and proceedings set out. All he asks is that he be given a clear title against the claims of all persons on account of any action of executor, of which he has knowledge.

"14. Your orator is advised that Carrie Keesling Lantz, Minnie Keesling Cornett and P. P. Keesling are the living children of Emory S. Keesling, other than James B. Keesling; that L. N. Keesling, E. B. Keesling and E. G. Keesling are sons of P. P. Keesling, and grandchildren of Emory S. Keesling; that Margaret Keesling, Jesse Keesling and E. G. Keesling, Jr., are great-grandchildren of Emory Keesling, and children of W. G. Keesling, and are infants, and that ———— Cole is the great grandchild of Emory Keesling, the infant child of Edith Keesling Cole.

"15. Your orator is advised that the above parties would be entitled to all the property, real and personal, devised and

bequeathed to James B. Keesling, on the happening of the contingency mentioned in the will.

"16. Your orator understands that the decree entered in this cause provides that he, as purchaser, does not have to look to the investment of the purchase money, but alleges that by this after-discovered evidence, actual knowledge of the diversion of the fund arising from the sale of the property is brought home to him, and, infants being involved, and persons not in being he asks the court to direct, under a proper construction of the will, what is the legal effect of the will under such circumstances.

"17. The premises considered, therefore, the prayer of your orator is that James B. Keesling, Edith Keesling Cole, and W. R. D. Moncure be made parties defendant to this bill, and be required to answer the same, but not under oath; that the decree entered in this cause be reviewed and reversed; that pending the decision of the court, an order be entered suspending the operation of said decree; that this bill be considered a bill of review, or as a petition for a rehearing; that the said Carrie Keesling Lantz, Minnie Keesling Cornett, L. N. Keesling, E. B. Keesling, E. G. Keesling, Margaret Keesling, Jessee Keesling, E. G. Keesling, Jr., and ———— Cole, infant child of Edith Keesling Cole, be made parties defendant to this suit, and be required to answer the same, the adults not under oath; that a guardian *ad litem* be appointed for the said infants, who shall answer the same under oath, and the infants answer by their guardian *ad litem*, also under oath; that upon a re-hearing of this cause, your honor will direct that the purchase money to be paid by him be invested under the terms of the will of. Emory S. Keesling, with power to sell, and that your honor further construe the will of Emory S. Keesling

and determine whether or not your orator shall, under the circumstances, pay to James B. Keesling the balance of the purchase money, and your honor will enjoin the said James B. Keesling, Edith Cole Keesling and W. R. D. Moncure from collecting said purchase money unless and until the will of Emory B. Keesling be complied with, and that your honor will grant all such other, further and more general relief shall demand, and your honor think proper, and your orator will ever pray, etc."

The decree in the collateral suit referred to in the bill of review, a copy of which is filed therewith, as "Exhibit Decree," is as follows:

"James B. Keesling, in his own right, and as executor and trustee under the will of Emory S. Keesling deceased,

*vs.*  In Chancery.

"Theresa Keesling, J. W. Lantz, trustee, Edith Keesling, Jessie B. Keesling, Carrie Keesling Lantz and J. W. Lantz, her husband, Minnie Keesling Cornett and Lon C. Cornett, her husband, P. P. Keesling and Margaret Neff Keesling, his wife, E. G. Keesling and Bessie W. Keesling, his wife, L. N. Keesling, E. B. Keesling, Margaret Keesling, Jessie Keesling and E. G. Keesling, Jr., the last three infants, and John P. Buchanan, guardian *ad litem* for said infants.

"This cause having been by an order entered on the third day of March, 1917, made a vacation cause, but not having been heard and determined in vacation this day came on to be heard in term upon process duly executed as to the adult defendants, upon the bill of complaint and exhibits therewith duly matured for hearing at first November rules, 1916, as to the adult defendants and taken for confessed as to said adult defendants, and upon the answer of the infant defendants Margaret Keesling, Jessie Keesling

and E. G. Keesling, Jr., by John P. Buchanan, their guardian *ad litem* appointed to defend them in this suit, and the answer of the said guardian *ad litem,* duly sworn to, and upon replication to said answer, upon the depositions of witnesses duly taken and filed on the third day of February, 1917, and upon the exhibits therewith, upon orders heretofore entered and upon the argument of counsel; and the court, having maturely considered the matters presented by the complainants bill, is of the opinion and doth adjudge, order and decree:

"(1) That the complainant, James B. Keesling, under the will of Emory S. Keesling, deceased, in his own right, takes a fee simple estate in the real estate of Emory S. Keesling, deceased, embraced in the fifth clause of the will of the said Emory S. Keesling, and an absolute estate in the personal property bequeathed by said clause both estates defeasible in the event of, and upon the death of the said James B. Keesling and his daughter, Edith Keesling, without lawful issue of the said James B. Keesling living at the death of the survivor of the said James B. Keesling and Edith Keesling, in which event, that is to say, in the event of the death of the survivor of the said James B. Keesling and Edith Keesling without lawful issue of the said James B. Keesling living at the death of such survivor, the estate real and personal, devised to the said James B. Keesling, shall pass to the other children of the said Emory S. Keesling, or their descendants.

"(2) That the said James B. Keesling during his lifetime has full and complete power and authority to sell, convey and dispose of the real and personal estate devised and bequeathed to him by the fifth clause of the testator's will, and to pass to the purchaser or purchasers thereof absolute and fee simple title thereto, free and discharged from the defeasance in the testator's will set forth, and without any responsibility on the part of the purchaser or purchasers

to follow or see to the reinvestment of the purchase money, and that the defendant, Edith Keesling, daughter of the said James B. Keesling, in the event she shall survive her father and become his heir or devisee, upon the death of her said father shall be vested with like authority and power to sell, convey and dispose of the said estate, or any part thereof. Upon such sale, the proceeds thereof must be reinvested in other property, to be held subject to the same defeasance and trust, with like power of sale and reinvestment.

"(3) The court is further of opinion that under the will of the said Emory S. Keesling, the said James B. Keesling takes the estate, real and personal, devised and bequeathed to him by the fifth clause of said will, subject to a personal obligation on the part of the said James B. Keesling to provide for and discharge the claims of the widow in and against the said estate and pay off and discharge legacies bequeathed by the said will to Carrie (or Clara) Keesling Lantz, wife of J. W. Lantz, and Minnie Keesling Cornett, wife of L. C. Cornett, of six thousand dollars each, with interest from the death of the testator to be paid in three equal annual installments from the date of such death as provided in the fourth clause of the testator's will, and also subject to personal obligation to pay the debts of the testator, and that the provisions in said will in favor of the widow, Theresa A. Keesling, and of Carrie (or Clara) Keesling Lantz and Minnie Keesling Cornett are not intended to be and are not made charges upon the real and personal estate devised to the said James B. Keesling by the fifth clause of the testator's will, but that only the estate devised to the said James B. Keesling in said real and personal estate is subject to such charge.

"It is, therefore, adjudged, ordered and decreed that the prayer of the complainant's bill that he be allowed to sell so much of the real estate of Emory S. Keesling, deceased, as may be necessary to pay off and discharge the legacies to

Clara Keesling Lantz, and Minnie Keesling Cornett, with interest, and any other unpaid indebtedness against the estate, or that he be authorized out of the proceeds of sale of all or any greater part of said real estate to pay off and discharge such legacies and obligations, be and the same is

hereby denied, but the denial of the prayer of complainant's bill to be allowed to appropriate sufficient of the proceeds of sale to pay off said legacies and obligations shall not in any way abridge or impair his right to dispose of the said estate or any part thereof for the purpose of reinvestment, as hereinbefore provided for.

"It is further adjudged, ordered and decreed, the object of this suit having been accomplished, that the same be stricken from the docket   *   *   *"

*Hutton & Hutton, J. J. Stuart* and *J. P. Buchanan*, for the appellant.

*W. R. D. Moncure, W. B. Kegley* and *E. Lee Trinkle*, for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

We will first dispose of the questions presented in argument which arise upon the assignments of error before us to the action of the court below in sustaining the demurrer to the original bill by the decree entered October 26, 1920.

[1] There is no controversy over the conclusion that the estate vested in James B. Keesling by the clause of the will in question is a defeasible fee in the real estate and a defeasible absolute estate in the personal property, devised and bequeathed thereby, subject to be defeated by the happening of the event of the death of the survivor of the said James

B. Keesling and his daughter, Edith Keesling Cole, without leaving any descendant of the said James B. Keesling living at the death of such survivor; and that upon the happening of that event the estate, real and personal, devised and bequeathed by such clause of the will, shall pass to the children of the testator other than James B. Keesling or to their descendants.    And we hold that such is the proper construction of such clause of such will.

The controverted questions before us which arise upon the assignments of error to the action of the court below in sustaining the demurrer to the original bill are only two. They will be disposed of in their order as stated below.

[2] 1. Was and is the power to sell and convey given by said clause of the will a power which cannot be completely executed during the life time of James B. Keesling?

This question must be answered in the negative.

It is contended on behalf of the appellant that the language of the will on the subject under consideration at least leaves this question in doubt, the language being "the said James B. Keesling *and* his said daughter, *if she shall survive her father* and become twenty-one years of age *and become the heir or devisee of her father,* shall *have* the full power and authority to sell and convey \* \* \* and *to invest the proceeds of such sale in other property, to be held and owned in the same way,* subject to the like provisions that *if they should both die* without issue living at the time of their death \* \* \*," etc.    (Italics supplied.)    The use of the particle "and" where it first occurs in the quotation is, however, plainly with the meaning of "and also," when construed with reference to the exercise of the power, as it is manifest from a reading of the whole sentence that the power is conferred, indeed, upon the father *and* daughter, but that it may be exercised by the father in his life-time, *and also* by the daughter, "if she shall survive her

father and become twenty-one years of age and become the heir or devisee of her father."

2. Upon the case made by the original bill, was there any obligation on the appellant as purchaser to look to the application of the purchase money?

[3] This question must be answered in the negative.

It was a purchase of property which in equity will be regarded as held in trust by James B. Keesling during his life time, but with general power of sale and conveyance given him, with discretion as to time and terms of sale, with express provision that the property in absolute right should pass to the purchaser; and also, along with the duty to reinvest the proceeds of sale in other property to be held upon the same trust, the trustee is given unlimited discretion as to the kind of property and as to the time in which reinvestment shall be made. And, according to the original bill, the appellant was a *bona fide* purchaser for full value of such property from such a trustee, without actual or constructive notice of any breach of trust committed or intended to be committed by the trustee.

It is well settled that in such case there was no obligation on the purchaser to look to the application of the purchase money. *Redford* v. *Clarke,* 100 Va. 115, 40 S. E. 630; *Hughes* v. *Tabb,* 78 Va. 313; *Claiborne v. Holland,* 88 Va. 1046, 14 S. E. 915; *Potter* v. *Gardner,* 12 Wheat. (U. S.) 498, 6 L. Ed. 706; *Elliott* v. *Merryman,* 1 Lead. Cas. in Eq. Pt. 1, 109, 119, and notes.

As said in *Claiborne* v. *Holland, supra,* 88 Va. 1046, p. 1049, 14 S. E. 915-916: "* * * it is well settled in Virginia, and the prevailing doctrine in this country is, that where a sale is made by a trustee under a power to sell and reinvest upon the same trusts, a *bona fide purchaser* who pays the trustee will be protected." (Citing *Hughes* v. *Tabb* and *Elliott* v. *Merryman,* and notes to latter case, *supra.*)

As said in *Hughes v. Tabb, supra,* (78 Va. 313, p. 325) : "The rule is that wherever the trust is of a defined and limited nature, the purchaser must himself see that the purchase money is applied to the proper discharge of the trust; but wherever the trust is general, and of an unlimited nature, he need not see to it. 2 Story Eq. Jur., sec. 1131; 1 Lom. Dig. 302-4; *Potter* v. *Gardner,* 12 Wheat. 498.

"There is much reason in the doctrine that where the trust is defined in its object, and the purchase money is to be reinvested upon trusts which require time and discretion, or acts of sale and reinvestment are manifestly contemplated to be at a distance from each other, the purchaser shall not be bound to look to the application of the purchase money, for the trustee is clothed with a discretion in the management of the trust fund, and if any persons are to suffer by his misconduct, it should rather be those who reposed confidence than those who have bought under an apparent authorized act. Opinion of Justice Story in *Wormley* v. *Wormley,* 8 Wheat. 442; Sugden on Vendor's Ch. 11, sec. 1. So, when a sale is made by trustees under a power to sell and reinvest upon the same terms, it has been held in America that the purchaser is not bound to see to the application of the purchase money. 2 Story's Equity, sec. 1134, and authorities there cited."

In *Redford* v. *Clarke, supra* (100 Va. 115 p. 119, 40 S. E. 630, 631), this is said: "In this case there was a discretion vested in the trustee to determine in what particular property he would reinvest the fund, a discretion over which the purchaser had no control, and for the due exercise of which, if he acted in good faith, he was not responsible.

We come now to the questions which arise upon the assignments of error to the action of the court below in refusing to allow the bill of review to be filed except upon the condition imposed by the decree of November 22, 1920, which is also under review on this appeal; or, what is the same

thing, the action of the court in imposing the condition aforesaid upon the leave to file such pleading.

These questions are also but two in number and they will be disposed of in their order as stated below.

[4] 3. Upon the case made by the allegations of the bill of review, what was the situation and duty of the appellant and of the court?

According to the case made by the allegations of the bill of review the appellant, at the time of his purchase, was under no obligation to look to the application of the purchase money. But after his purchase and, indeed, after the decree upon the original bill, it is alleged by the new pleading that the appellant discovered, and, in substance, became possessed of actual knowledge that the sale to appellant by the trustee was for the purpose of enabling the trustee to commit a *devastavit* by the diversion and use by the trusteé of the purchase money to pay his own personal obligations, and that if the purchase money was paid by appellant to the trustee the latter would so use such money and thus be enabled to commit and would commit the *devastavit*.

This plainly presents a situation in which the purchaser occupies the position of a stakeholder with respect to the unpaid purchase money, and, in equity and good conscience, it was his duty, by interpleader, to convene all of the persons in being, who might have an interest in such money, before the court having jurisdiction of the subject matter and pay the money which was due and to become due and payable into the hands of the court, so that it might be reinvested by the trustee under the terms of the trust, subject to the supervision of the court. And this, in substance, was precisely what the appellant conceived to be his duty under the circumstances set forth in his new pleading and was the relief he himself prayed, if not by the specific prayers of his new pleading, certainly by his submitting

the matter to the jurisdiction of the court and by his prayer for general relief.

The situation presented by the new pleading is not one in which, accurately speaking, the purchaser has the right to look to the application of the purchase money. The discretionary powers vested in the trustee by the terms of the will with respect to the undesignated character of property and unlimited time within which the reinvestment is to be made, prevent this. The purchaser has no right of control of the action of the trustee in these matters. Nor, indeed, would the court. But the court could prevent the *devastavit* and yet permit the trustee to exercise the discretion vested in him by the will.

The sole right which the purchaser has under such circumstances is to take such action as will enable him to avoid becoming liable as *particeps criminis* with the trustee in the commission of the *devastavit* aforesaid.

[5] As said in the note to *Eliott* v. *Merryman*, 1 Lead. Cas. Eq. Pt. 1, p. 119: "* * * the purchaser will unquestionably be liable to the *cestui que trust*, if he knows that the trustee is acting in violation of his trust, or even that he entertains such a design and sells as a means of accomplishing it"; citing, among other cases, *Jackson* v. *Undegraff*, 1 Rob. (40 Va.) 107; *Graff* v. *Castleman*, 5 Rand. (26 Va.) 195, 16 Am. Dec. 741; *Pinckard* v. *Woods*, 8 Gratt. (49 Va.) 140.

As stated in the note to *Pinckard* v. *Woods*, 8 Gratt. (49 Va.), in Va. Rep. Ann., at bottom pages 471-2: "It is a well-settled doctrine that all who participate in a breach of trust are jointly and severally liable; thus a party knowingly dealing with the executor in such a way as to enable him to commit a *devastavit* will be held liable therefor." The Virginia cases there cited to sustain this proposition undoubtedly do so.

It is true, as appears from the above-cited authorities and numerous others on the same subject which might be cited, that when the purchaser of trust property from a fiduciary derives a peculiar personal benefit, such as the payment of an existing personal debt of the fiduciary to him, or the payment of less than full value, or other fruit of the collusion, it is a plain case of liability on the part of the purchaser, upon the principle that he is *particeps criminis* with the defaulting fiduciary. It is also true, as stated in *Graff* v. *Castleman, supra,* 5 Rand. (26 Va.) 195, at page 201 (16 Am. Dec. 741) : "In the cases of *Nugent* v. *Giffard,* 2 Ves. 269, and 1 Atk. 463; *Meade* v. *Ld. Orrary,* 3 Atk. 235; and *Tanner* v. *Ivis,* 2 Ves. 466; Lord Hardwicks would not suffer creditors or legatees to follow assets into the hands of a purchaser from the executor or administrator, unless there was evidence of fraud or collusion between them, nor did he consider it evidence of such fraud and collusion that the executor was applying the assets to the payment of his own individual debt, and this with the knowledge of the purchaser." And as stated in the same opinion in *Graff* v. *Castleman,* 5 Rand. (26 Va.), pp. 201-2, 16 Am. Dec. 741: "In *Whale* v. *Booth,* cited 4 Term Rep. 625, note, Lord Mansfield went quite as far. He said, '* * * (however) * * * there is one exception * * * where a contrivance appears between the purchaser and the executor to make a *devastavit*'." But, as appears from the opinion in this Virginia case and in others of the Virginia cases on the subject above cited and referred to, it would seem to be now settled that a party knowingly dealing with a trustee or other fiduciary in such a way as to enable him to commit a *devastavit* will be held liable therefor, although such party himself may pay present money and full value and derive no peculiar benefit as the fruit of the transaction. And

this conclusion seems to us to be sound in principle certainly where the party himself, not merely suspects, but affirmatively states that he knows as an actual fact that the trustee will commit the *devastavit* if he deals with the trustee by paying money belonging to the trust fund into the hands of the trustee.

[6] We are, therefore, of opinion that there was no error in the decree of October 26, 1920, in so far as it treated the case presented by the bill of review as one of which it was proper for the court to take jurisdiction.

4. Is the decree of November 22, 1920, erroneous in that in granting leave to file the bill of review it imposed the condition or terms upon the appellant that he should pay into court that portion of the purchase money which was owing by the appellant in accordance with his contract of purchase and past due at the time of the entry of the decree?

This question must be answered in the negative.

No authority is cited for appellant to sustain the contention that such action was erroneous, nor have we been able to find any.

[7] On the contrary, we see that in 16 Cyc. 523-4, cited for appellees, this is said: "It is not necessary to obtain leave of the court to file a bill of review to correct an error of law apparent on the face of the record; but such leave is necessary where the bill is founded on new matter or newly discovered evidence. The granting of such leave is not a matter of right, but rests in the sound discretion of the court, subject to review * * *; and in granting leave terms may be imposed."

The bill of review in the case before us is founded on alleged newly discovered evidence and must rest solely on that ground; because, as we have above held, there was no error

of law apparent on the face of the record as it stood at the time of the entry of the former decree.

[8] Further: It is well settled that a bill of review filed on the ground of newly discovered evidence entitles the complainant to relief only to the extent that the newly discovered evidence, if it had been brought forward in time, should have changed the character of the former decree sought to be reviewed. And it is plain from what we have said above that if the allegations of the bill of review are all taken to be true the only change in the character of the former decree which the appellant would be entitled to ask would be that the decree allow him to pay the purchase money into court instead of to the said trustee. The alleged newly discovered evidence in no way gives the appellant any right to decline payment into court of the part of the purchase money which is past due, nor, indeed, of the residue as it falls due, under his contract of purchase. Indeed the bill of review itself states that appellant "is willing, ready and anxious to carry out his contract in the bill and proceedings set out. All he asks is that he be given a clear title against the claims of all persons on account of any action of executor of which he has knowledge." This relief will be undoubtedly afforded to the appellant if he pays the money into court. The condition or terms imposed upon the appellant by the decree under consideration violates no right of the appellant, grants him the full relief to which he was entitled at the time such decree was entered, and was, indeed, in entire accord with his rights as a stakeholder, which was the position he himself took before the court by his bill of review. For the court to allow the appellant to use the action of the court, in allowing the bill of review to be filed, as a ground for withholding the payment of the purchase money past due and payable, would be to allow the appellant to impugn his own good faith in seeking to file the bill of review.

Without passing upon the sufficiency of the bill of review with respect to the well understood essential requisites of such a bill, since no objection as to such particulars is urged before us, and confining our holding to the points aforesaid raised by the assignments of error before us, we are of opinion that there was no error in the decree of November 22, 1920.

As to both decrees under review, therefore, the case will be affirmed.

*Affirmed.*