# Richmond.

## TRUST COMPANY OF NORFOLK, VIRGINIA, ET ALS. V. COMMONWEALTH OF VIRGINIA.

March 1, 1928.

Reheard October 30, 1928.

Holt, J., having taken his seat on the Supreme Court of Appeals did not sit on the rehearing in this case.

The opinion states the case.

*George L. Doughty, Hugh C. Davis,* and *Benjamin T. Gunter,* for the plaintiff in error.

*E. Warren Wall,* for the Commonwealth.

*On rehearing.*

*Leake & Buford, L. M. Wickham* and *William Pepper Constable,* for the plaintiff in error.

*W. W. Martin, Henry R. Miller, Jr.,* and *E. Warren Wall,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

On May 4, 1920, Lucius J. Kellam domiciled in Virginia, and a resident of Accomac county, executed an instrument in the form of a deed of trust, to the Safe Deposit and Trust Company of Baltimore, Maryland, by which he settled upon his two sons as benefi-

ciaries certain securities valued at approximately $50,-000.00, and listed in a schedule attached to the deed. The securities, consisting of stocks and bonds, were delivered to the trustee, and the deed provided that in so far as they were registered, the trustee was authorized to have them registered in its name, in order to facilitate transfers for reinvestment or in the course of the execution of the trust.

The trustee was directed to collect the income upon the corpus of the property, and after paying to itself five per cent commissions on the gross income and paying such taxes "as may be chargeable" on the property, the trust fund and the income were to be held upon trusts, which may be summarized thus:

(1) The income was to be allowed to accumulate and so become a part of the corpus, until the two sons of the assignor, Lucius J. Kellam, Jr., then eight years of age and Emerson Polk Kellam, then five years old, should respectively attain the age of twenty-five years.

(2) When the older son reached the age of twenty-five years one-half of the entire fund then on hand, original principal and accumulations, was to be delivered to him as his property. As the younger son attained the same age the balance of the entire fund should be delivered to him.

(3) If either of said two sons should die before receiving his share, leaving children living at his death, then his share was to be paid over and delivered to the children; otherwise if the one so dying left no children living at his death, his share of the fund should accrue to the survivor, who would thereupon become entitled to the entire fund when he became twenty-five years of age.

(4) The maker of the deed of trust reserved to him-

self the right to alter, or to cancel and invalidate, the entire trust provision in these further stipulations:

"If as said children arrive at twenty-five years of age, I shall be then living, then and in that event I reserve to myself the right to postpone the delivery to them of their share of said trust funds, principal and income provided I shall, prior to the delivery thereof, notify said trustee to postpone such delivery, and provided also that I shall have the right, and which said right I hereby reserve, to revoke this trust in whole or in part at any time before the delivery of the principal and accumulations to my said children or either of them, and in that event said trustee shall reconvey to me such part or the whole of the estate hereby conveyed with its accumulations as I may demand, and thereupon the trust hereby created shall cease to the extent of the property so reconveyed to me; and I reserve to myself also the right to alter and change the trusts hereby created."

The donor further retains his control of the fund by having the deed provide that "in my lifetime said trustee shall make no change in any of the investments now turned over to it, without my written approval;" although full power had been conferred upon the trustee to change the investments as their judgment might dictate.

The non-resident trustee signed the deed, accepted the trust, and the securities have been at all times since in its possession in the city of Baltimore.

Mr. Kellam, the grantor in the deed, died at his residence in Accomac county August 9, 1920, three months after the trust was created.

The trustee in Baltimore regularly reported the intangible personal property constituting the trust fund

to the taxing authorities in Maryland, and paid the State and city taxes there assessed against it.

In the year 1925, the trust fund was assessed for taxation in Virginia by the assessors in Accomac county for the years 1921, 1922, 1923 and 1924 and placed upon the books for 1925, the assessments for these years, with penalties and interest, amounting to $1,054.77.

In April, 1926, the Baltimore trustee applied to the circuit court for a correction of these assessments, and insisted that the fund held by it was not taxable in Virginia. The court held that the fund was taxable in this State and ordered it to be assessed against "The Safe Deposit and Trust Company of Baltimore, Maryland, trustee for L. J. and E. P. Kellam, and Carrie P. Kellam, guardian of L. J. and E. P. Kellam." Mrs. Kellam had qualified as guardian of the two children upon the death of her husband. Upon the petition of the trustee and of the guardian a writ of error was allowed.

■■ Objection is made, on behalf of the Commonwealth, to the consideration by this court of an agreed statement of facts and copies of two deeds found in the record, because they are not identified by the trial judge in a bill of exceptions, or otherwise.

The order of the court refers to the agreed statement of facts and in express terms files it as part of the record. The agreed statement of facts recites as to two deeds of trust "that copies of both of the said trust deeds are filed herewith and made a part hereof;" one of these deeds was the deed of trust in question. The order further recites that the plaintiffs in error duly excepted to the adverse ruling of the court. These papers were necessarily made a part of the record by the order of the court, and no bill of exception was necessary. The function of a bill of exceptions is to put into a record

something which does not appear in the court proceedings to have been made part of the record.

The question to be decided is whether the corpus of the trust fund is taxable in Virginia, and if so to whom it should be assessed.

The applicable statute is section 2307 of the Code of Virginia as amended in 1920 (Laws 1920, chapter 376), and in 1922 (Laws 1922, chapter 520, section 1). It is there provided that if property consists of bonds and stocks in any county or city other than that of the owner's residence, or in a State other than Virginia, it shall be listed by and taxed to the owner, thus fixing the *situs* of such intangible property for the purpose of assessing the tax.

As to whom it should be assessed and taxed, this statute provides: "If property be owned by a person *sui juris*, it shall be listed by and taxed to him. If property be owned by a minor, it shall be listed to and taxed by his guardian or trustee, if any he has; if he has no guardian or trustee, it shall be listed by and taxed to his father, if any he has; if he has no guardian nor trustee, father nor mother, it shall be listed by and taxed to the person in possession." It is then provided that in case of a trust for an adult or a married woman, the property shall be assessed to the trustee if "any they have in this State;" otherwise it shall be listed to the persons themselves. There is no requirement that in a case of a non-resident trustee for a minor, the property may not be assessed to the trustee.

The proper construction, and the true meaning and effect of the deed, presents no great difficulty.

The complete power and control retained by the grantor over the corpus and income of the trust fund during his lifetime constituted the instrument a mere revocable expression of his intention as to the disposi-

tion of the property upon his death, if the disposition made by him was not recalled before that event occurred. So long as that situation remained the entire trust fund was unquestionably taxable in Accomac county as the property of Mr. Kellam. The actual disposition of the property under the provisions of the deed could not take effect, if at all, except upon his death. His death having occurred, without his having altered or revoked the deed, the beneficial estates or interests passed to the beneficiaries, as a transfer intended to take effect in enjoyment after the donor's death. In *Bullen* v. *State of Wisconsin*, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830, a resident of Wisconsin, by a deed of trust settlement quite similar to the deed in the instant case, transferred to a Chicago trust company a large fund invested in bonds, stocks, and notes, and it was held that upon his death the corpus of the trust fund was subject to the inheritance or succession tax of Wisconsin. The court decided that the absolute power of control over all the gifts, evidenced by the right of entire revocation reserved by the donor, continued the ownership of the intangibles in the donor with the owner's dominion power of disposition.

The donor here having died without altering or revoking the deed, the gifts passed to the beneficiaries in accordance with the provisions of the deed, and they acquired such equitable estates as the deed conferred upon them.

In *Carter* v. *Keesling*, 130 Va. 655, 108 S. E. 708, real and personal property was given by a testator to his son, with a provision that if the son and daughter of his son should both die without issue, then the property should revert to the testator's other children. It was there held that the estate vested in the son was a defeasible fee in the real estate and a defeasible absolute

estate in the personal property. In the instant case the two children took a defeasible absolute estate in this personal property, in equal shares except as varied by the difference in their ages, with the right of survivorship between them, defeasible as to each of them upon dying before reaching twenty-five years of age without issue. There is no provision in the deed in terms covering the event that both beneficiaries should die under twenty-five and without issue. Whether the fund in such event would revert to the estate of the donor, or would pass to the estate of the survivor it is unnecessary now to determine.

The reported cases in Virginia show that it has been the policy of the State to impose taxes upon all intangible property, the ownership of which is traceable to a citizen or citizens of Virginia.

It has been repeatedly held that when a citizen and resident of this State has an equitable life estate in intangible personal property held in trust by a nonresident trustee or otherwise enjoys the usufruct of the property, the State can levy a tax upon the corpus of the fund, even though the fund has never been in Virginia. *Brooklyn Trust Co.* v. *Booker, Com'r*, 122 Va. 680, 95 S. E. 664; *Wise, Trustee,* v. *Commonwealth*, 122 Va. 693; 95 S. E. 632; and *Ellett* v. *Commonwealth*, 132 Va. 136, 110 S. E. 358.

Though the tax is assessed in the name of the trustee, the burden is in reality imposed upon the beneficial owner, a resident of the Commonwealth, who enjoys the protection of its laws along with other citizens, and ought in fairness to contribute a due proportion of revenue for the support of the government. *Selden* v. *Brooke*, 104 Va. 832, 52 S. E. 632, and *Ellett* v. *Commonwealth, supra.*

It is insisted for the plaintiff in error that these

cases are to be distinguished from the instant case, because in those cases the life tenant was actually determined and was in receipt of an annual income from the fund. The court, in these prior cases, however, declares the corpus of the fund to be taxable in Virginia, and not merely the interest of the life tenant nor the income. The person who was receiving the income was naturally the owner to whom the property should be assessed and who should pay the tax upon the corpus of the property. In the instant case the beneficiaries have no life estate merely; they have an absolute estate though there is a possibility of its subsequent defeasance and though the enjoyment of the estate in possession is postponed.

But without dwelling upon these features of the case, the actual situation is this—Mr. Kellam was the owner of the securities and the fund was taxable in Virginia as his property during his lifetime. If his death did not effect a transfer of the ownership for taxable purpose to his two sons, then his ownership was projected beyond his death, and the title and equitable right to the property passed to his personal representative until the two sons became respectively twenty-five years of age. In that event the fund would be taxable in Virginia as part of Kellam's estate, certainly for the period mentioned.

The endeavor to adapt the ancient maxim *mobilia sequuntur personam* to intangible personal property, with reference to its *situs* for taxation, has produced great variety and some contrariety of opinion in this country, with its forty-eight separate jurisdictions, and its great wealth of credit investments. We need not enter upon this limitless field of discussion.

We are satisfied that the intangibles in question could not be relieved of taxation in Virginia by their

removal to Baltimore and being put in the temporary possession of the trustee there for the purposes expressed in the trust deed. The material enquiry here is to whom they should be assessed and by whom the tax should be paid, and the answer should be consonant with fairness and in harmony with our tax laws. If an adult life tenant is in actual reception of the annual income, it is a matter of indifference to him whether the trustee pays the tax and deducts it from the income, or whether the life tenant pays if after receiving the gross income—as was said in *Ellett* v. *Commonwealth, supra.*

By reason of the postponement of the actual possession and use of the fund on the part of the beneficiaries under the trust provisions until they become twenty-five years of age, nothing comes into their hands during the intervening period out of which they should pay the tax. We see no reason why, in the case of these infant beneficiaries, the tax on intangibles should not be assessed to and be paid by the trustee, who is under a duty to pay "such taxes as may be chargeable" on the property, though the trustee is non-resident. Under the statute the property may, in case of minors, be listed to the guardian or trustee; though in the case of an adult person or married woman it can only be listed to a resident trustee. In *Wise* v. *Commonwealth, supra,* the trust property held by a non-resident trustee was assessed to him and this assessment was upheld; since that decision, however, the statute has been changed so as to require the property to be assessed to the beneficiary, if not a minor, in such a case. In *Taylor* v. *Commonwealth,* 124 Va. 445, 98 S. E. 5, intangibles owned by a minor in Virginia were assessed at the residence of the minor against a non-resident guardian. The statute involved in that case, in so far as it relates

to minors, was identical with section 2307, hereinbefore transcribed. It is apparent in the instant case that the assessment to the non-resident trustee will provide the more convenient and just method of taxing these intangibles, and will throw no obstacle in the way of collecting the tax.

The record in the case discloses that on May 3, 1920, Mr. Kellam executed a deed of trust to the Trust Company of Norfolk, Norfolk, Virginia, for the benefit of his two sons, quite similar though not identical with the deed to the Baltimore company. This deed transferred to the trustee another separate list of securities $50,000.00 or more in value. These securities had been assessed against the Norfolk Trust Company and the tax paid by it regularly each year. When the securities in the possession of the Baltimore trustee were assessed for the first time in 1925, they were assessed against both trust companies jointly. For this reason the Norfolk company joined with the Baltimore company in the application to be exonerated from the payment of the tax.

In the order entered by the trial court the facts relative to both deeds are recited, as also the qualification of Mrs. Kellam as the guardian, and the judgment of the court is stated as follows:

"Whereupon, it is considered by the court that the assessment of intangible personal property held by the Safe Deposit and Trust Company of Maryland, trustee for L. J. and E. P. Kellam, is erroneously assessed to the Trust Company of Norfolk, trustee for L. J. and E. P. Kellam, it is ordered that such assessment be corrected and that the name of the Trust Company of Norfolk be eliminated therefrom.

"But the court being further of opinion that all such intangible property held under the trust aforesaid by

the Safe Deposit and Trust Company of Baltimore, Maryland, for L. J. and E. P. Kellam is properly assessable with taxes by the Commonwealth of Virginia in Accomac county, it is ordered that the assessment aforesaid be amended and corrected so that the names of the corporation and persons assessed with such taxes read as follows: The Safe Deposit and Trust Company of Baltimore, Maryland, trustee for L. J. and E. P. Kellam, and Carrie P. Kellam, guardian of L. J. and E. P. Kellam."

In our opinion the court correctly ordered the name of the Norfolk company to be eliminated from the assessment of the Baltimore trust fund. While there is a liability to the Commonwealth for the payment of taxes in the aggregate on all the intangible personal property owned by these minors, there is no reason why separate assessments should not be made upon two funds under such severance of the two funds from the general property as appears here. In *Taylor* v. *Commonwealth, supra,* the court says:

"Further: Where the owner is a minor, idiot or lunatic, he is of course incompetent to list for taxation property owned by him, and alike incompetent to act as a payer of taxes. Hence, the statute in all such cases provides for someone else than the owner of the property to list it for taxation and to whom it shall be taxed. To provide a competent person to list the property for taxation and also to act as payer of the taxes thereon, who will be a person competent to give a correct list and one who, if not the owner, will be charged with a responsibility to the property owner in the premises, were, we think, the objects and purposes of the statute in designating by whom property of such persons is to be listed and to whom taxed, and not the making of the domicile of the former person the *situs*

of the property for taxation." In *Wise* v. *Commonwealth, supra,* the trust fund there in question was assessed separately against the non-resident trustee.

As a general rule the tax assessors should be left to act according to the circumstances in listing intangibles, especially of minors, as they can doubtless best judge of what comports with justice, convenience and practicability in assessing the tax at the *situs* and in the collection of the tax; unless constrained by statute.

In the second sentence from the extract of the order above transcribed, the court, having eliminated the Norfolk company, directs the assessment to be made in the name of the Baltimore company and of the guardian jointly. The property should of course be assessed in Accomac county as the father and both sons resided there, but as the guardian had no control over the fund and no portion of it nor of its usufruct could come into the possession of the guardian during the minority of her wards, it is not essential that she should be charged with the assessment and payment of the tax. Our opinion is that it should not be so assessed. It should rather be assessed against the trustee, under the peculiar circumstances here, who has laid upon it a direct obligation to pay all taxes chargeable upon the property.

The order of the trial court will therefore be amended by striking out from the concluding words of the second sentence, in the extract from the order, viz: "The Safe Deposit and Trust Company of Baltimore, Maryland, trustee for L. J. and E. P. Kellam, and Carrie P. Kellam guardian of L. J. and E. P. Kellam," the words "and Carrie P. Kellam guardian of L. J. and E. P. Kellam." The assessment will thus remain against the Baltimore Trust Company, as trustee for the named beneficiaries of the trust.

As so amended the judgment is affirmed, with costs against the plaintiff in error.

*Amended and affirmed.*

*On rehearing October 30, 1928.*

A rehearing of the decision rendered in this case, on March 1, 1928 (141 S. E. 825), was allowed by the court upon the petition of the Safe Deposit and Trust Company of Baltimore, Maryland, trustee in the deed out of which the controversy arose. The application for rehearing was based chiefly upon the contention of this trustee that the ruling of the court allowing the State a right to assess a tax upon the corpus of the personal property in question rendered the Virginia statute, under which the assessment was made, repugnant to the Constitution of the United States, and therefore void. Although no such constitutional question was brought to the attention of the court, and was therefore neither argued nor considered, upon the original hearing, the court is of opinion that we should consider and determine a question of such gravity, though raised for the first time in a petition for rehearing. The reargument was confined largely to the presentation of the views of the respective parties upon the constitutional question involved. It was insisted by the trustee that the Virginia statute, as interpreted by the court, was violative of the provisions of section one of the fourteenth amendment, in that the imposition of the tax complained of was a denial of and abridged the privileges and immunities of the parties in interest, and deprived them of their property with-

out due process of law. In support of these claims learned counsel maintained, as stated in their brief, the following propositions:

"(a) That a State, under the fourteenth amendment, can tax only that property of which it has jurisdiction,

"(b) That it has jurisdiction only of such property as is within its borders,

"(c) That the only theory upon which personal property, which, or the evidence of which, is physically situated without the State, can be held to be within its jurisdiction is that embodied in the maxim, *mobilia sequuntur personam*,

"(d) That the rule is one of convenience merely, based upon the owner's presumed dominion over and enjoyment of the property, and embodies a legal fiction which yields to the facts of the case, and,

"(e) That inasmuch as this fiction has so yielded in the case of tangible property generally, and also in the case of intangible property held by a non-resident trustee for a resident beneficiary who, although in reception of the income therefrom, has no control or dominion over the fund (this being true from the point of view both of property and succession taxation), therefore, a *multo fortiori* must it yield when the resident *cestuis que trustent* have neither possession, control nor the usufruct, but have merely a contingent and future interest in the intangible property so held for them."

The assertions so made under (a) and (b) embody correct general principles of law. The positions assumed in (c) and (d) rest upon too broad a basis. It is a rule too generally acknowledged in our law of taxation to admit of doubt, that intangible personal property is and should be taxed to the owner or owners, legal or equitable, although the written

evidence of the chose in action, where such exists, is in another State. The maxim *mobilia sequuntur personam* is the firmly maintained governing principle by which the right of the State of the owner's domicile to levy the tax upon intangible personal property is to be judged. While some of the cases, in dwelling upon the origination of the application of the maxim in this country, speak of it as one of convenience merely, and as embodying a legal fiction which may yield to the facts of the case, these observations are usually found in a line of cases defining the doctrine of *business situs* of intangible property, where, for example, funds or securities are placed in the hands of an agent in another State for permanent use in a business, requiring their constant change and the absolute control of the agent over them; a doctrine with which we are not concerned here, and which is an acknowledged deviation from the general rule.

Discussion of the question of the *situs* of intangibles for taxation may be taken as now precluded by the decision of the Supreme Court of the United States in the case of *Blodgett* v. *Silberman* (April 1928), 277 U. S. 1, 48 Sup. Ct. Rep. 410, 72 L. Ed. 749, where the court says:

"At common law the maxim '*mobilia sequuntur personam*' applied. There has been discussion and criticism of the application and enforcement of that maxim, but it is so fixed in the common law of this country and of England, in so far as it relates to intangible property, including choses in action, without regard to whether they are evidenced in writing or otherwise and whether the papers evidencing the same are found in the State of the domicile or elsewhere, and is so fully sustained by cases in this and other courts, that it must be treated as settled in this jurisdiction whether it approve itself to legal philosophic test or not.

"Further, this principle is not to be shaken by the inquiry into the question whether the transfer of such intangibles, like specialties, bonds or promissory notes, is subject to taxation in another jurisdiction. As to that we need not inquire. It is not the issue in this case. For present purposes it suffices that intangible personalty has such a *situs* at the domicile of its owner that its transfer on his death may be taxed there."

We cannot agree with either the premises or the conclusion appearing in the petitioner's proposition (e). The maxim above mentioned by the Supreme Court of the United States does not *yield* in the case of intangible personal property in which a resident beneficiary has solely a life estate or other partial interest in the corpus of a fund, but it does not apply because the corpus of the fund is not owned by residents of the State imposing the tax, and has never in any sense been within the jurisdiction of the taxing State.

In the recent case of *Brooke* v. *City of Norfolk*, 277 U. S. 27, 48 Sup. Ct. Rep. page 422, 72 L. Ed. 767, which apparently was decided at the same time the opinion in *Blodgett* v. *Silberman, supra*, was handed down, the court in quite a brief opinion passed upon this question, with no reference to the maxim. It was shown in that case that a resident of Maryland, by his will probated in Baltimore, bequeathed in trust to a Baltimore tr st company a large fund, the income upon which was to be paid to a resident of Virginia, and which was to go to certain persons, none of whom were residents of Virginia, at the death of the life tenant. The donor and all persons in interest, except the receiver of the income for life, were non-residents of Virginia, and no part of the trust property was or ever had been in Virginia. The State of Virginia

required the person receiving the income for life to pay a tax upon the entire corpus of the foreign trust fund, although she paid the tax upon the income derived from this source. The court says:

"But the doctrine contended for now is that the petitioner is chargeable as if she owned the whole * * *.

"But here the property is not within the State, does not belong to the petitioner and is not within her possession or control. The assessment is a bare proposition to make the petitioner pay upon an interest to which she is a stranger. This cannot be done. See *Wachovia Bank & Trust Company* v. *Doughton*, 272 U. S. 567 [47 Sup. Ct. 202, 71 L. Ed. 413]:

The case of *Wachovia Bank & Trust Company* v. *Doughton*, 272 U. S. 567, 47 Sup. Ct. 202, 71 L. Ed. 413, referred to by the court as authority involved the validity of an inheritance or succession tax, but the decision was based upon the fact that the property passing in succession did not belong to the deceased life tenant and was never within the jurisdiction of the taxing State. A resident of Massachusetts, by his will probated at his domicile in that State, bequeathed to a trust company in the State a fund to be held in trust, the income to be paid to his daughter so long as she should live, and at her death to be transferred to such persons as she should appoint by her will, with further provision in case of failure of such appointment. The daughter subsequently married and became a resident of North Carolina and by her will probated in the latter State exercised the power of appointment. North Carolina under her law imposed a succession tax upon the value of the property passing to the appointees. It was held by the Supreme Court that the power of appointment was derived from the will of the

donor and the right to its exercise followed only from the disposition of the property made in the Massachusetts will; that the assets of the trust estate had never been in North Carolina, and had no *situs* actual or constructive in that State: "The exercise of the power of appointment was subject to the laws of Massachusetts and nothing relative thereto was done by permission of the State where Mrs. Taylor (the daughter) happened to have her domicil. No right exercised by the donee was conferred on her by North Carolina. A State may not subject to taxation things wholly beyond her jurisdiction or control." The imposition of the succession tax was declared invalid.

On the other hand, it is held in the case of a trust settlement by deed in which the donor reserves the right to revoke the trust during his lifetime, as in the instant case, the domiciliary State of the donor may impose a succession tax upon the trust fund on the death of the donor, as the establishment of the trust then becomes irrevocable, although the trustee holding possession of the intangibles constituting the trust fund is not a resident of the State in which the donor and beneficiaries are domiciled. *Bullen* v. *Wisconsin*, 240 U. S. 625, 36 Sup. Ct. 473, 60 L. Ed. 830; *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 48 Sup. Ct. Rep. 225, 72 L. Ed. 565.

In the latter case the court says:

"The present tax is not laid on the donor, but on the beneficiary; the gift taxed is not one long since completed, but one which never passed to the beneficiaries beyond recall until the death of the donor; and the value of the gift at that operative moment, rather than at some later date, is the basis of the tax."

The ownership and *situs* of the fund was necessarily

in the domiciliary State of the donor and the benefi-
ciaries, for purposes of taxation, pursuant to the maxim
*mobilia sequuntur personam*, although the intangibles
were in the possession of a foreign trustee, who held
full legal title to them.

These recent cases establish indubitably
that the fixed doctrine in the federal jurisdiction, by
which we are governed in discussing a constitutional
question, is that intangible personal property retains
its *situs* for taxation at the domicil of the owner,
although the physical evidence of the chose in action
may be removed to another jurisdiction, and that when
the *situs* and ownership of a fund consisting of intangi-
bles are found to be in a certain State, another State
does not acquire jurisdiction to tax the fund from the
fact that a person enjoying the income for life from the
fund, is or becomes a resident of the other State.

These cases suggest and render material certain
enquiries as to the facts of the instant case. Are there,
in the instant case, any non-resident owners of the
corpus of the trust fund, in remainder or otherwise?
Does the assessment here require any persons to pay a
tax upon property or an interest in property, to which
they are strangers? Whose property is taken without
due process of law? Are the owners of the trust fund
in this case resident in Virginia?

The donor, Kellam, domiciled in Virginia and
a resident of Accomac county, desired to provide for
the future of his two sons, after they should become,
respectively, twenty-five years of age, and to that
end determined to settle upon them in equal shares
one hundred thousand dollars in securities, with
the direction that the income should not be dis-
tributed but be allowed to accumulate. To accom-
plish this purpose he executed the two trust deeds

in the record, one to the Norfolk company in Virginia, the other to the Baltimore company, assigning to the trustee in each deed securities approximately fifty thousand dollars in value. Under the terms of each deed one half of the trust fund and its accumulated income was to be delivered to each of the beneficiaries as they became twenty-five years of age, with the proviso that if either of the sons should die unmarried and without issue prior to attaining the age mentioned the interest of that son should accrue to the survivor. Owing to the fact that the deeds stipulated that the donor reserved the right to revoke the trust and gifts, these deeds—as held in the *Bullen Case*—only operated as transfers of the gift upon the death of the donor; the equitable ownership remained in the donor as long as he lived, and hence a succession tax could be assessed against the corpus of the fund at his death. The securities passing to the Norfolk company were delivered to it, those passing to the Baltimore company were likewise delivered and removed to Baltimore. These transfers took place in Virginia. In the latter instance the *situs* of the intangible personalty was not changed by the removal of the physical evidences of the intangibles to another State. Each deed provided that the trustee should, out of the income, pay the taxes chargeable upon the fund. The securities in the Baltimore company deed were assessable and taxable in Virginia as well as those transferred to the Norfolk company as trustee, as long as the donor lived. Doubtless if the donor had lived for twenty years subsequent to these transactions, the trustee in Baltimore would have paid the tax in Virginia each year. Unfortunately he died three months after the execution of the two deeds of trust. Did his death result in any material change in the situation, other than making finally

operative the gift provisions of the two deeds? It created no non-resident owners. There remained still the sole fact that the legal title to, and physical evidences of, the securities were with the Baltimore trustee. This is by no means determinative of the lack of jurisdiction in Virginia to tax the fund. In *Blodgett* v. *Silberman, supra,* the question was raised whether bonds and certificates of indebtedness of the United States, payable to bearer, deposited in a safe deposit box in New York City, and never removed from there, owned by the decedent at the time of his death, were intangibles coming within the rule of *mobilia sequuntur personam.* The argument was made that such bonds, transferable from hand to hand, had lost their character as choses in action, and had taken on the character of physical property. This argument was held unsound by the learned Chief Justice delivering the opinion, as follows:

"The question here is whether bonds, unlike other choses in action, may have a *situs* different from the owner's domicile such as will render their transfer taxable in the State of that *situs* and in only that State. We think bonds are not thus distinguishable from other choses in action. It is not enough to show that the written or printed evidence of ownership may, by the law of the State in which they are physically present, be permitted to be taken in execution or dealt with as reaching that of which they are evidence, even without the presence of the owner. While bonds often are so treated, they are nevertheless in their essence only evidences of debt. The Supreme Court of Errors expressly admits that they are choses in action. Whatever incidental qualities may be added by usage of business or by statutory provision this characteristic remains and shows itself by the fact that their destruc-

tion physically will not destroy the debt which they represent. They are representative and not the thing itself."

It can scarcely be maintained that the assessment of the trust fund here requires any one to pay a tax upon property, *to which they are strangers*, as that expression is used in *Brooke* v. *Norfolk, supra;* and hence without due process of law. It is argued that the estate given the two sons is merely a contingent interest in the property, and as such not taxable. It is certainly not technically contingent. The proper construction of the deed is that it confers an absolute gift upon the two beneficiaries, subject to be divested upon a condition subsequent. If the deed be construed so as to require the trust to terminate in the event of the happening of the condition, that is should both sons die without issue before attaining the age of twenty-five, then there is a reversion to the estate of the donor. By analogy to the law of real estate the possible reversion is purely contingent, the prior gift to the sons vested. I Minor on Real Property, sections 171, 819.

It is urged in argument that the two sons are not owners of the property assessed for taxation, within the true meaning of the taxing statute. This presents a practical question rather than a legal one, in the instant case. The two sons are residents of Virginia, and administration upon the donor's estate could only take place in Virginia. Unless the two sons are owners, or in conjunction with the personal representative of the donor's estate they constitute the owners, then this fund has no ownership, and we have this large fund without any owner and existing in a non-taxable vacuum, until it is ascertained whether the condition subsequent is met. It is sometimes said that the law

abhors a vacuum. Certainly we should not recognize such a resultant situation here.

The court is of opinion that no non-residents are owners or have any interest in the corpus of the trust fund in Baltimore; that the present, and if essential, the ultimate owners of the property are residents of the State of Virginia; that the assessment in this case does not require any persons to pay a tax upon intangible personal property to which they are strangers.

We are further of opinion that both the owners and the *situs* of the intangibles in question have at all times been and still are within the jurisdiction of the State of Virginia, and therefore the assessment made in this case is not in any way violative of or repugnant to the fourteenth amendment to the Constitution of the United States. The real problem is, how the property should be assessed, and who should be required to pay the tax. In the judgment rendered by the court this was solved by directing the trustee, who has temporary possession of the securities, to pay the tax, just as is now being done by the Norfolk trustee. This is in accordance with the terms of each of the deeds, and it seems to the court that this method carries out the original intention of the donor and is reasonably in conformity with the provisions of the statutes of Virginia.

It is further insisted that the tax for the year 1922 should in any event be stricken out as invalid, because the failure to ascertain the lack of assessment for that year did not occur within three years prior to the time the assessment was made in January, 1925, in accordance with section 2332 of the Code of 1919, as amended by Acts 1920, chapter 115. No such question was raised before the lower court; no assignment of error was made in this respect; and the record does not

contain sufficient facts to enable this court to pass upon it intelligently. Therefore we cannot consider it.

For these reasons the court is constrained to adhere to the conclusions heretofore reached and to the judgment entered by the court thereon; and it will be so ordered.

*Judgment affirmed.*