Mr. Justice Clayton
delivered the opinion of the court.
This bill was filed to recover certain slaves, upon the ground that they were purchased by the mother of the complainants, with money which properly belonged to them. It charges that the bill of sale for the slave, from whom all in controversy have descended, was made to their mother, and to the complainants, as heirs of Thomas Hughes, deceased. In another part the bill alleges, that “it was understood and agreed among all the parties, that their mother should have the slave during her life; and after her death to go to complainants.” Alleges the loss of the bill of sale; the second marriage of their mother; and the conveyance of the slaves by the second husband, to the children of the second marriage. Complainants allege their ignorance of this conveyance, until shortly before the filing of the bill.
The answer denies every allegation of the bill, which could give countenance to the claim of the complainants.
The transaction took place in the state of Alabama, in the year 1818. A good deal of testimony has been taken, and, as might be expected after the lapse of so much time, a great deal *233 of contradiction is involved. Our belief from the evidence is, that half the money, or more, was paid with funds which justly belonged to complainants, and for which they have never received any compensation. This money was derived from the rent of their land. Their mother was administratrix of their father’s estate, and the guardian of some of complainants; but she has not embraced these rents in her accounts. The answer alleges that the rents were expended in the education of the complainants, but there is no evidence in support of it. The account and receipts filed show, that the rents were never paid to complainants.
In regard to the title to the slave, the testimony is still more conflicting. The person who sold the slave, says he gave a bill of sale, but does not recollect its terms. He says farther, that their mother, at the time of the sale, told complainants, if they would help to pay for the negro woman, she should belong to them after her death. One witness says the bill of sale was made to the complainants; and several swear that they have heard the second husband disclaim all title to the negroes; and have heard her say, he should never have them. Several other witnesses prove the bill of sale was made to Mrs. Hughes and her heirs. The deed of gift from McVay, the second husband, to the children of the second marriage, bears date in 1825, and several witnesses swear the complainants knew of it, shortly after its execution. Murdock married the only surviving child of the second marriage. There is a plea of the statute of limitations, and this plea must decide the cause.
It does not appear that the mother ever qualified as the guardian of more than one of the children; and the purchase seems to have been made by her in her own right, not as guardian. If, therefore, any trust were created by the use of their funds, it was an implied trust, and not an express one. Continuing, express trusts form the only class protected from the operation of the statute.
But if there had been a direct and express trust, between the complainants and their mother, the relation was dissolved, when the slaves were conveyed to the children of the second *234 marriage. That was a virtual denial of the right of the complainants, and the assertion of an adversary claim. This was an abandonment of the fiduciary character, and the statute would commence running from that day, if .the complainants were under no disability. The disabilities appear to have all been removed, in 1833, and this suit was not commenced till 1841. See Kane v. Bloodgood, 7 Johns. Ch.; Armstrong v. Campbell, 3 Yerg.; Angell on Lim. 171.
The only possible way to avoid the effect of the statute, would be to hold that the mother had a life-estate, with remainder to the complainants. The allegation in the bill is not direct or positive to this point, but is quite vague and indeterminate. The answer denies everything like it. There is no proof which establishes it in such a manner, as to make it the proper foundation of a decree.
• This is probably a hard case upon the complainants, and they may have been treated with some injustice; but upon the proof made this court is not authorized to give them relief.
The decree will be reversed and the bill dismissed ; but the complainants are to pay only one half of the cbsts in the court below, and the defendants the residue.
Decree reversed, and bill dismissed.