PHEBE A. GOODMAN, APPELLANT, V. LUVINA SMITH ET AL., APPELLEES.

FILED JUNE 26, 1913.   No. 17,338.

1. **Parol Evidence:** DEEDS: CONSIDERATION. The true consideration for a deed of conveyance of real estate may be shown by parol evidence, although the deed recites a consideration.

2. **Trusts:** RESULTING TRUSTS: LIMITATIONS. When the property of an infant is sold and the proceeds invested in other property, the title to which is taken in the name of a friend of the infant who transacted the business, a resulting trust arises in favor of the infant. The statute of limitations will not begin to run against an action by the *cestui que trust* after becoming of legal age until she has notice that the trustee denies her right in the property.

3. **Appeal:** EQUITY: TRIAL DE NOVO. In an action in equity this court is required upon appeal to try the cause *de novo* upon the pleadings and evidence, and determine the matter independently of the judgment of the trial court. Upon the evidence in the record, the decree is reversed, with directions to enter a decree in favor of the plaintiff.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Reversed with directions.*

*Jay C. Moore* and *Burkett, Wilson & Brown,* for appellant.

*S. P. Davidson, contra.*

SEDGWICK, J.

Phebe A. Goodman began this action in the district court for Johnson county to establish her interest in cer-

tain real estate in that county which she claimed as an heir of her father, Thomas Phippin. The district court entered a judgment in favor of the defendants, from which the said Phebe A. Goodman appealed. Afterwards she died, and the action was revived in the name of her husband, Thomas Goodman, as administrator of her estate.

Thomas Phippin died in Waukesha county, Wisconsin, in 1847. He left surviving him his widow, Ann Phippin, and two children, the said Phebe, afterwards Phebe Goodman, and another daughter, who a few days later died in infancy. The widow, Ann Phippin, afterwards married Worthy Luce, and two children were born to them, the defendant, George Luce, and the defendant, Luvina Smith, formerly Luce. Phebe's mother, Ann Luce, formerly Ann Phippin, died in 1901 in Johnson county, Nebraska, and afterwards, in June, 1909, Worthy Luce died intestate in that county.

The petition alleges that when Thomas Phippin died he was the owner of 40 acres of land in Waukesha county, Wisconsin, and some personal property, and that under the law of Wisconsin at the time his two daughters inherited the land, and, upon the death of the younger daughter, the daughter Phebe inherited her interest in the land, so that Phebe became the owner of the 40 acres of land; that this 40 acres of land was afterwards sold for about $1,600, and with the proceeds, together with about $2,000 realized from 20 acres of land in Waukesha county owned by Mr. and Mrs. Luce, the real estate in question in Johnson county was purchased by Mr. and Mrs. Luce, so that this plaintiff is entitled to an undivided four-ninths interest in said real estate. After the death of Mr. and Mrs. Luce, these defendants, George Luce and Luvina Smith, claimed to be the owners of the land in Johnson county as the heirs of Worthy Luce, and that their half sister had no interest therein.

Did Thomas Phippin purchase and pay for the 40-acre tract? If he did, have the proceeds realized from that 40 acres been traced by this evidence to the purchase of the

land held in the name of Worthy Luce at the time of his decease? The deposition of one Ira Redford was in evidence upon the trial. He was a brother of the former owner from whom it is claimed Mr. Phippin purchased the land. He was working for Mr. Phippin at the time. He testified that Mr. Phippin gave his brother a yoke of oxen in the purchase, but he did not know whether he paid some money also. He saw his brother take the oxen away when the trade was made, and heard Mr. Phippin say that he (Phippin) would have no more trouble about complaints that his milldam caused the land to overflow, as he now owned the land himself. This, he says, was a year or two before Mr. Phippin's death. The witness shows that he was entirely familiar with the land, and with the business relations of his brother and Mr. Phippin, and with all of the persons then interested or in any way connected with the ownership of the land. He testified positively that his brother sold the land absolutely to Mr. Phippin and received full pay therefor from him. The witness was 78 years old when he testified. He made mistakes as to dates, or rather failed to be positive in regard to them, as well as other matters of less importance. His evidence shows that he had an active mind and clear ideas when he testified. He might not be expected to remember unimportant matters which happened more than a half century before, but his evidence seems clear and quite satisfactory as to the fact that the land was sold by his brother to Mr. Phippin, and the agreed payment received therefor, and that from the time of the purchase until his death Mr. Phippin exercised the rights of ownership of the land. This witness and several others testified that from the time of Mr. Phippin's death this tract was generally known as "Phebe's forty," and was so designated by Mr. and Mrs. Luce.

Mr. Phippin never received a deed of the land, and after his death a deed was executed by the former owner to Ann Phippin. It recites a consideration of $25, and there is no other evidence cited in the briefs that she paid any-

thing for the land. The consideration named in the deed can always be inquired into, and the preponderance of the evidence is that the consideration for this deed was Mr. Phippin's previous purchase and payment for the land. The evidence shows that there was always the best of feeling and entire confidence among these parties. None of them seems to have supposed that it made any difference who was named as grantee in a deed of real estate purchased by them. This 40 acres and the 20 acres afterwards purchased were deeded to Ann Phippin, afterwards Luce, and, when these two tracts were sold and the Nebraska land purchased with the proceeds, the deed was taken in the name of Worthy Luce, although the 20 acres were bought, or at least improved, with money received from land given Mrs. Luce by her father, and no one claimed that Mr. Luce himself furnished the money with which to buy the Nebraska lands. The three children were apparently treated alike by Mr. and Mrs. Luce, and they evidently supposed that Phebe had at least as large an interest as any of the three children in the property. A short time before his death Mr. Luce attempted to make an equal division of the three eighties among the three children. He agreed to give each of them an 80, and each of them was to pay to him $1,000, which was supposed to be about one-fourth of the value of the land received. Upon their agreements to pay this amount he deeded an 80 to each of the three, and they took possession of the land, and Phebe paid the $1,000 according to agreement, but the other two children failed to make any payment. Not long before his death Mr. Luce stated that the three children would get the property, and although some of this property clearly belonged to Mrs. Luce, and all of her children inherited from her equally, and the proceeds of Phebe's 40 were more than a third of the purchase price of the Nebraska land, still Mr. Luce assisted by his labor, and perhaps financially, in improving the land, and they all seem to have supposed that the fair proportion to Phebe, under all the circumstances, would be a one-third

Goodman v. Smith.

interest.  It is difficult to determine from this evidence
whether Mr. Luce contributed money to improve these
lands, and, if so, what amount, and it seems probable that
the idea of Mr. and Mrs. Luce in that regard was sub-
stantially correct.  At least Mrs. Goodman appears to have
acquiesced in it.  We think that the weight of the evidence
is that Mrs. Goodman's property contributed one-third of
the purchase price of the Nebraska land, and that she is
entitled to share accordingly.

It is contended that the action is barred by the statute
of limitations.  As we have already said, there was no
quarreling in this family.  Each appears to have been
willing to assist the others in any way possible.  They all
understood in a general way what the interest of each was
in the property, and none of them had any reason to sup-
pose that his or her right or interest would be denied by
the others, until after the death of Mr. and Mrs. Luce,
when his two children claimed the whole property.  The
interest of Mrs. Goodman, then, was held by Mrs. Luce in
trust until the land was exchanged for Nebraska land,
and afterwards was so held in trust by Mr. Luce, and the
statute of limitations would not begin to run against the
claim of Mrs. Goodman until the parties who held her
property in trust denied her rights therein.  The $1,000
that Mrs. Goodman paid when she took title to the 80
acres of land above mentioned was invested in other lands,
and she should have the benefit thereof.  A decree should
be entered allowing the plaintiff an interest in the land
to the amount and value of $1,000, and an equal one-third
interest in the remainder.

The judgment of the district court is reversed and the
cause remanded, with instructions to enter a decree as
above indicated.

REVERSED.


REESE, C. J., LETTON and FAWCETT, JJ., not sitting.