# CIRCUIT COURT OF AUGUSTA COUNTY

W. Riley Shiflet
and Betty Shiflet

v.

Jeff May,
Executor of the
Estate of Jerry May,
deceased

Case No. CL97-000394

BY JUDGE HUMES J. FRANKLIN, JR.

August 6, 1998

These matters come before the Court on two Bills in Equity filed by Betty Shiflet and W. Riley Shiflet against the Estate of Jerry May, deceased, alleging that as a result of an October 5, 1966, transaction, the plaintiffs gave the decedent, Jerry May, $4,400.00 to purchase 880 shares of stock in a pharmaceutical company to be held in the decedent's name for the benefit of the plaintiffs. They further allege that as a result of various types of stock splits, dividends, etc., the original 880 shares have increased, or would have increased, to approximately 35,640 shares of stock of Mylan Laboratories, Inc., formally Mylan Pharmaceuticals, having a value somewhere in the neighborhood of $630,000.00 and would have paid dividends of approximately $35,000.00. Prayers for relief in both bills request that the Court impose a constructive trust on the said stock shares for the benefit of the plaintiffs; that the Court require the defendant to convey and transfer all the shares of stock to the plaintiffs jointly, pursuant to said constructive trust; that the plaintiffs receive from the defendant a sum of money equal to the value of the stock shares in the event the Estate of Jerry May is unable to convey said stock shares to the plaintiffs. Answers were filed on behalf of the defendant to both Bills of Complaint, raising in both cases an affirmative defense that the

plaintiffs' claims against the estate are barred by the applicable statute of limitations, specifically Va. Code § 8.01-243(B), and further raising the equitable defense that the plaintiffs' claims are barred by the doctrine of laches.

The parties are specifically requesting at this point that the Court rule on the defendant's plea of the statute of limitations, and insofar as the same is applicable, the deadman statute defense. For purposes of ruling on these matters, the parties have agreed that the Court may consider the plaintiffs' deposition testimony, and further, all parties have agreed that the facts as stated in the defendant's initial memorandum submitted to the Court are not in dispute. See defendant's "Memorandum of Law in Support of Defendant's Plea of Statute of Limitations and Deadman Suit" defense, p. 3, "the parties have agreed that the Court may consider the plaintiff's deposition testimony when deciding the defendant's plea of the statute of limitations. The Court should also note that general, rather than specific, cites are being given in this and the next paragraph because of facts stated are not believed to be in dispute." See also plaintiff, Betty Shiflet's, "Response of Plaintiff, Betty Shiflet, to the Defendant's Plea of Statute of Limitations, Deadman's Defense," p. 1, "because the facts of the case are not believed to be in dispute, plaintiff, Betty Shiflet, will rely on the actual facts recited in the defendant's Memorandum."

The Court is satisfied that the applicable statute of limitation in this case is that pleaded by the defendants, i.e., Virginia Code § 8.01-243(B).

While numerous theories concerning the October 5, 1966, transaction have been briefed and argued by the plaintiffs, the Court is likewise satisfied that the transaction, if proven by the plaintiffs, would be a purchase money resulting trust, under Virginia law as opposed to an express trust, constructive trust, or bailment. As previously stated, the plaintiffs claim that on October 5, 1966, they gave the decedent, Jerry May, $4,400.00 to purchase 880 shares of pharmaceutical stock to be held in his name for their benefit because "it was ... only offered to ball players." See plaintiff Betty Shiflet's deposition at page 34. In the case of *Leonard v. Counts*, 221 Va. 582, 272 S.E.2d 190 (1980), the Court, at page 588, states: "An express trust is based on the declared intention of the trustor. A resulting trust is based on a presumed intent or inference of law from the circumstances, citing *Peal v. Luther*, 199 Va. 35, 37, 97 S.E.2d 668, 669 (1957) .... . Resulting and constructive trusts comprise two categories of trust by operation of law arising without any express declaration of trust .... . Thus, a resulting trust arises when one person pays for property, or assumes the payment of all or part of the purchase money, but has title conveyed to another with no mention of a trust in the conveyance."

The Court is also satisfied, for purposes of ruling on the statute of limitations motion, that there is more than sufficient corroborating evidence to overcome the Virginia Deadman's Statute, Va. Code § 8.01-397. The corroboration is not only the writing signed by the plaintiffs and the decedent but also comes in the form of a canceled check in the amount of $4,400.00 and the stock transaction ledger introduced during the plaintiffs' deposition. A more troubling issue to the Court, but one it does not have to reach in deciding the statute of limitations question, is whether or not the initial corroboration is sufficient to allow testimony with respect to subsequent statements by the decedent years later. *Taylor v. Mobil Corporation*, 248 Va. 101, 44 S.E.2d 705 (1994), would seem to indicate that additional corroboration may be necessary.

Having found, for purposes of deciding the defendant's statute of limitations pleas, that the October 5, 1966, transaction is a purchase money resulting trust, the Court then turns to whether the claim is barred by the statute of limitations. Virginia law is clear that the statute of limitations does not apply to express trusts which have not been terminated. *Russell's Executor v. Passmore*, 127 Va. 475, 510, 103 S.E. 652 (1920). Likewise, it is clear that the statute of limitations does apply to an expressed trust when it has been terminated for whatever reason and the beneficiaries have notice. *Wiglesworth v. Taylor*, 239 Va. 603, 608, 391 S.E.2d 299 (1990).

It is equally clear that the statute of limitations does apply to a constructive trust. *Redford v. Clarke*, 100 Va. 115, 120, 40 S.E. 630 (1902).

What is not as clear to this court is whether the statute of limitations applies to a purchase money resulting trust. There can be no question that the Supreme Court has recognized Mr. Lyle and his treatise *Notes on Equity Jurisprudence* as authority in the area of trusts. *Porter v. Shaffer*, 147 Va. 921, 928-29 (1926). Mr. Lyle in his *Notes on Equity Jurisprudence*, p. 71, has this to say on the subject of statutes of limitations: "While, as we have seen, the statute of limitations does not run in favor of the trustee of an express, or, *in general, a resulting trust*, the rule is otherwise in the case of the constructive trust. The reason for this distinction is that in the former cases, the trustee does not hold adversely to the cestui — the trustee's title and possession being a rightful one, while in the case of the constructive trust, the situation is otherwise. Here the trustee's title is wrongfully acquired, and his possession of the trust res a tortious possession." (Emphasis added.)

Equally persuasive are the cases cited by the defendant for the proposition that the statute of limitations does run against a resulting trust. *Redford v. Clarke*, 100 Va. 115, 120-121, 40 S.E. 630 (1902); *Winston v. Gordon*, 115 Va. 899, 913, 80 S.E. 756 (1914).

While the Court cannot find any recent authorities on the subject, the Court is persuaded that the statute of limitations does run against the beneficiary of a resulting trust.

Having found that the statute of limitations does run against the beneficiary of a resulting trust, the Court must now address the issue of when the statute begins to run against the beneficiary of a resulting trust.

Let me say at the outset while the defendants have placed great weight, both in their brief and during oral arguments, on the language quoted in *Russell's Executors v. Pasmore*, 127 Va. 475, 103 S.E. 652 (1920), which dealt with a parol trust, the Court feels that case is distinguishable on its facts from the case at bar. Likewise, the plaintiffs place a great deal of emphasis on *Stevenson v. Jones*, 142 Va. 391, 128 S.E. 568 (1925); however, the Court feels that is a bailment case as opposed to a resulting trust case.

The plaintiffs cite cases from several different jurisdictions standing for the proposition that the cause of action does not accrue and the statute begin to run until the trustee repudiates the trust relationship and communicates the repudiation to the beneficiary. See Response of Plaintiff Betty Shiflet to Defendants Plea of Statute of Limitations and Deadman's Statute Defense, p. 5. *Feinman v. Lombardo*, 214 Bankr. 260, 266 (D. Mass. 1997) ("the statute of limitations begins to run when the trustee of a resulting trust repudiates it" (construing Massachusetts law) (citing *Hanrihan v. Hanrihan*, 174 N.E.2d 449, 453 (1961) (same))); *Lezinsky v. Mason Malt Whiskey Distilling Co.*, 196 P. 884, 886-87 (Cal. 1921) (equating a resulting trust to an express trust in noting that the statute of limitations would not run until there was a repudiation of trust); *First Nat'l Bank v. Rabb*, 479 P.2d 986, 989 (Colo. 1970) (noting that the statute of limitations "could not begin to run against [beneficiary] until there was a repudiation of the trust" and that "[r]epudiation ... occurs only when the trustee, by word or action, shows an intention to abandon, renounce, or refuse to perform under, the trust"); *Brodeur v. American Rexoil Heating Fuel Co., Inc.*, 430 N.E.2d 1243, 1244-45 (Mass. 1982) (The cause of action accrues "when the alleged trust is repudiated or otherwise terminated to the knowledge of the beneficiary"); *Jirka v. Prior*, 243 N.W.2d 754, 759 (Neb. 1976) (same); *Cline v. Cline*, 255 S.E.2d 399, 407 (N.C. 1979); *Zundel v. Zundel*, 278 N.W.2d 123, 131-32 (N.D. 1979); *see also* 76 Am. Jur. 2d, *Trusts*, § 718 (1992).

The defendants, on the other hand, point to *Board of Supervisors of Hanover County v. Vaughn*, 117 Va. 146, 150, 83 S.E. 1056 (1915), for the proposition that the statute runs against the beneficiary whether or not they have notice of the repudiation.

What is equally troubling to the Court in this case is when the repudiation occurred. Did it in fact occur with the first sale of stock by the decedent, Jerry May, or did it occur when the estate of Jerry May repudiated the trust in 1996. Could not a fair argument be made that the subsequent purchases of stock in 1993 and 1994[1] by the decedent, May, were attempts to replace the previously sold stock, which efforts, by the decedent, to replace all of the previously sold stock were cut short by his untimely death in 1996. Case law holds that the statute of limitations begins to run from the moment the cause of action accrues, not from the time it is determined that damages have actually been sustained. *Locke v. Johns-Manville Corp.*, 221 Va. 951 (1981). The Court finds that the cause of action in this case arose when the defendant repudiated the trust after May's death in 1996, not when May sold the stock prior to 1992. The Court is well aware that it has long been recognized in Virginia that if an injury, however slight, coincides with a wrongful act, then the cause of action accrues at that time. See *McHenry v. Adams*, 248 Va. 238 (1994). However, the injury, however slight, must be ascertainable by the plaintiff in order for the cause of action to accrue. In the case at bar, the plaintiffs had no way of knowing that May had been selling the stock for his own benefit. Their action accrued only when they had notice of this after May's death, when the estate repudiated the trust.

Accordingly, I overrule the defendant's plea of the statute of limitations.

### October 16, 1998

This matter comes before the Court on a Motion for Reconsideration filed by the defendant, Jeff May, Executor of the Estate of Jerry May, deceased, requesting the Court to reconsider its ruling of August 6, 1998, overruling the defendant's plea of the statute of limitations.

Often Courts and counsel have not been precise in dealing with trust terminology. Terms such as express, resulting, constructive, implied, indirect, direct, and equitable are used. In some instances, Courts have been satisfied with lumping resulting and constructive trusts together under the heading of implied, indirect, or equitable without carefully distinguishing exactly what is what. A California court summarizes the situation and succinctly communicates the key difference between resulting and constructive trusts:

> The terms "constructive trust" and "resulting trust" have often been confused by attorneys, as well as some courts. Both are involuntary

---

[1] See Exhibit H attached to Memorandum of Law in Support of Defendant's Plea of Statute of Limitations and Deadman's Statute Defense.

trusts implied by law and exempt from the statute of frauds. However, "[a] resulting trust arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest .... It has been termed an "intention-enforcing" trust, to distinguish it from the other type of implied trust, the constructive or "fraud-rectifying" trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them.

*Martin v. Kehl*, 193 Cal. Rptr. 312 (Cal. App. 1983) (citations omitted). Without dealing with possible literary arguments concerning trust characterization, a reading of the general authorities reveals, just as counsel for all sides concede, that there are three types of trusts: express, resulting, and constructive. The Court feels that defense counsel, in its Motion for Reconsideration, have pursued a line of reasoning which is similar to the confusion the California court discussed above. By classifying resulting trusts as implied or indirect trusts, defense counsel argues that the law of constructive trusts should apply because constructive trusts also have been defined as implied or indirect trusts. Defendant's "Motion for Reconsideration" pp. 2-6.

"A resulting trust is founded upon presumption or inference that the person in whom the title vests intends to hold it for the benefit of the cestui" and "[i]ntention, whether presumed, implied, or supposed by the law, is always an element of resulting trust." Annotation, *When statute of limitations starts to run against enforcement of resulting trust*, 45 A.L.R. 2d 382, 384 (1956) (citations omitted). The "general conclusion which logically follows" the above statement and is "well supported by the decisions, is that the statute of limitations does not begin to run against the cestui's suit to establish or enforce his rights until such time as the trustee repudiates the trust, or at the least asserts some adverse interest or claim or violates his obligations." *Id*. at 384-88 (citations omitted). The above statement "appears to be no more than an expression of the familiar general principle that the statute does not run against a cause of action until the cause of action accrues." *Id*. at 388 (citations omitted). Thus, "[i]n most cases, the statute does in fact begin to run at the time when the repudiation or violation of trust occurs, or when the trustee begins to hold adversely or to assert a hostile claim." *Id*. at 389-390. "If, however, the fact of repudiation, or of adverse holding or claim, was not known to the cestui, the statute will ordinarily begin to run only from the time when knowledge or notice of the denial was brought home to him." *Id*. at 390-391 (citing *Roach v. Caraffa*, 25 P. 22 (Cal. 1890); *Taylor v. Morris*, 127 P.

66 (Cal. 1912); *Varrois v. Gommet*, 185 P. 1001 (Cal. App. 1919); *Von Zastrow v. Schiffbauer*, 250 P.2d 624 (Cal. App. 1952); *Walrath v. Roberts*, 12 F.2d 443 (D.C. Cal. 1925); *Warren v. Adams*, 36 P. 604 (Colo. 1894); *Dennison v. Barney*, 113 P. 519 (Colo. 1911); *Schlosser v. Schlosser*, 162 P. 153 (Colo. 1916); *Vandewiele v. Vandewiele*, 136 P.2d 523 (Colo. 1943); *Parlin v. McClure*, 150 S.E. 835 (Ga. 1929); *Epps v. Epps*, 75 S.E.2d 165 (Ga. 1953); *Joseph v. Citizens & Southern Nat'l Bank*, 78 S.E.2d 193 (Ga. 1953); *Reynolds v. Summer*, 18 N.E. 334 (Ill. 1888); *Thomas v. Merry*, 15 N.E. 244 (Ind. 1888); *Buckel v. Auer*, 120 N.E. 437 (Ind. 1918); *Rickes v. Rickes*, 141 N.E. 486 (Ind. App. 1923); *Amory v. Amherst College*, 118 N.E. 933 (Mass. 1918); *Murdock v. Hughes*, 15 Miss. (7 S. & M.) 219 (1846); *James v. James*, 248 S.W.2d 623 (Mo. 1952); *Mantle v. Speculator Min. Co.*, 71 P. 665 (Mont. 1903); *First State Bank v. Mussigbrod*, 271 P. 695 (Mont. 1928); *Opp v. Boggs*, 193 P.2d 379 (Mont. 1948); *Goodman v. Smith*, 142 N.W. 521 (Neb. 1913); *Levy v. Ryland*, 109 P. 905 (Nev. 1910); *Southward v. Foy*, 201 P.2d 302 (Nev. 1948); *Crowley v. Crowley*, 56 A. 190 (N.H. 1903); *Wolfe v. Smith*, 1 S.E.2d 815 (N.C. 1939); *Lewis v. Akerberg*, 118 N.E.2d 166 (Ohio 1953); *McGann v. McGann*, 37 P.2d 939 (Okla. 1934); *Guyer v. London*, 102 P.2d 875 (Okla. 1940); *Leedy v. Ellis County Fair Ass'n*, 110 P.2d 1099 (Okla. 1941); *Wilhelm v. Pfinning*, 129 P.2d 580 (Okla. 1942); *Exchange Bank of Perry v. Nichols*, 164 P.2d 867 (Okla. 1945); *Killebrew v. Ray*, 181 S.W. 2d 334 (Tenn. 1944); *Cole v. Noble*, 63 Tex. 432 (1885); *Tennison v. Palmer*, 142 S.W. 948 (Tex. Civ. App. 1912); *Hamilton v. First National Bank of O'Donnell*, 155 S.W.2d 626 (Tex. Civ. App. 1941); *Hayward v. Corpus Christi*, 195 S.W.2d 995 (Tex. Civ. App. 1946); *Dickens v. Dickens*, 241 S.W.2d 658 (Tex. Civ. App. 1951); *Arneman v. Arneman*, 264 P.2d 256 (Wash. 1953); *Mayer v. Johnson*, 133 S.E. 154 (W. Va. 1926)).

As applied to the specific case of purchase money resulting trusts where "it may be initially presumed that the parties intended that the taker of title was to hold the property for the provider of the consideration," the general rule is that "the statute of limitations begins to run against the cestui's suit to establish his rights or recover the property when, and not until, the trustee repudiates or violates the trust or begins to hold adversely, and knowledge or notice thereof has been brought home to the cestui." *Id.*, at 396-97. Furthermore, "in no case coming to the writer's attention has the view been distinctly taken that the statute will run against the cestui by reason of an adverse holding of which he has no notice or knowledge." *Id.*, at 411, see,

*Waller v. Waller*, 693 S.W.2d 61 (Ark. 1985)[2]; *Martin v. Kehl*, 193 Cal. Rptr. 312 (Cal. Ct. App. 1983)[3]; *Bradbury v. Fuller*, 385 So. 2d 7 (Fla. App. 1980)[4]; *Whitworth v. Whitworth*, 210 S.E.2d 9 (Ga. 1974)[5]; *Department of Revenue v. Puget Sound Power & Light Co.*, 694 P.2d 7 (Wash. 1985). The Washington court stated that "[i]n the case of a resulting trust, the statute of limitations begins to run when the trustee repudiates the trust and notice of such repudiation is brought home to the beneficiary." 694 P.2d at 12.

The general rule is also stated in *American Jurisprudence*: "In some jurisdictions, the statute of limitations does not begin to run in the case of a constructive or resulting trust until the trustee clearly repudiates or disavows the trust, and such disavowal is brought home to the cestui que trust." 76 Am. Jur. 2d, *Trusts*, § 718 (1992) (citing *Jirka v. Prior*, 243 N.W.2d 754 (Neb. 1976); *Cline v. Cline*, 255 S.E.2d 399 (N.C. 1979)). No contrary authority is cited for resulting trusts, only constructive trusts. "However, there is also authority for the view that no repudiation of an implied or constructive trust is necessary to set the applicable statute of limitations in operation." *Id.* (citing *Norton v. Bassett*, 97 P. 894 (Cal. 1908) (involving a constructive trust); *Stianson v. Stianson*, 167 N.W. 237 (S.D. 1918) (involving "constructive or involuntary trusts arising from alleged wrongful acts"). Although no Virginia cases are cited for the rule, *Michie's Jurisprudence of Virginia and West Virginia* states that the "bar of statute of limitations will not be applied in equity to the enforcement of a resulting trust, of which equity alone has

---

[2] The *Waller* court stated that "the statute of limitations does not run in favor of the trustee of resulting trust, which most frequently arises where one person pays the consideration for a purchase and title is taken in the name of another, until the trustee disavows the trust or asserts some right to the property inconsistent with it, and the cestui que trust has knowledge of such disavowal or assertion, or, from the circumstances, ought to have learned of it." 696 S.W.2d at 64 (quoting 37 C.J. 908).

[3] The *Martin* court stated that "[t]he statute of limitations does not run on a beneficiary of a resulting trust until he has actual knowledge of repudiation or breach of trust." 193 Cal. Rptr. at 319 (citations omitted).

[4] The *Bradbury* court stated that "[a] beneficiary of a resulting trust is not bound to act until the trustee repudiated the trust or begins to hold the property adversely with knowledge on the part of the beneficiary." 385 So.2d at 8 (citations omitted).

[5] The *Whitworth* court stated that "the statute of limitations does not begin to run against a party asserting title by way of an implied trust until there has been notice of an adverse claim by the trustee or such change of circumstances as is calculated to put a reasonably prudent person on notice that the trust is no longer recognized as subsisting, or something to indicate to a reasonably prudent person that the relation of trustee and cestui que trust has ceased ... ." 210 S.E.2d at 12 (citations omitted).

cognizance." 19 M.J., *Trusts and Trustees*, § 125 (1991) (citing *Heiskell v. Powell*), 23 W.Va. 717 (1884)).

The Court has found no case which it considers to be directly applicable to this case. However, there are several cases which the Court feels provide some guidance.

Virginia law dealing with the definition of resulting trust appears to be in line with how the other states treat them. In *Leonard v. Counts*, 221 Va. 582, 588, 272 S.E.2d 190 (1980), the court states that "[a] resulting trust is based on a presumed intent or inference of law from the circumstances" and that a constructive trust is created independently from the intention of the parties. The court also states that "[w]hile there is a distinction between resulting and constructive trusts, albeit difficult to determine, the same remedial principles apply to both." *Id.* The language the court uses in *Leonard* in defining a resulting trust is a bit confusing because the court uses "or" which could be argued to mean that a resulting trust does not entirely rest on the intention of the parties. However, without more detailed discussion in the case law, there is little support for the proposition that Virginia courts should treat resulting trusts similar to constructive trusts by way of ignoring the intent element of a resulting trust. Thus, when the parties' intentions create a trust relationship, the statute of limitations does not run until there is a repudiation, violation, termination, etc., and is therefore similar to an express trust. In this sense, the only difference between an express and resulting trust is that with the former, the intent of the parties is in writing, and with the latter, it is not in writing.

*Board of Supervisors of Hanover County v. Vaughn*, 117 Va. 146, 83 S.E. 1056 (1915), has been cited as authority for cases involving resulting trusts and the notice issue. It is helpful for the issue of characterizing the transaction but not for deciding whether the beneficiary's knowledge or notice of the repudiation is necessary. Vaughn, as a public official, got money that the Board of Supervisors wanted back. The court stated that "[t]he receipt of money by a public officer under color or claim does *not* render such officer an express trustee for the persons claiming the right to recover back the money wrongfully received, and the statute of limitations applies." *Id.*, at 150 (emphasis added). It is the opinion of the Court that the case turned on whether Vaughn was to be characterized as a trustee or not. The court ruled that he was not and therefore the statute applied. Thus, without the existence of a trust, any discussion of notice of repudiation is irrelevant (and not explicitly in the text), and the quote from *Sheppard v. Turpin*, 44 Va. (3 Gratt.) 373 (1847), seems unnecessary since Vaughn was not a trustee.

Although an express trust is involved, *Wiglesworth v. Taylor*, 239 Va. 603, 391, S.E.2d 299 (1990), provides guidance. Wiglesworth was the

beneficiary of a trust created by his father's will, and United Virginia Bank (the bank) and Robert Gray Wiglesworth were co-trustees. Wiglesworth filed bankruptcy, and Taylor became the trustee of the bankrupt estate. Wiglesworth filed for bankruptcy on December 14, 1977, Taylor was appointed trustee on January 10, 1978, Taylor informed the bank of the bankruptcy on April 10, 1979, the bank responded to Taylor by letter dated April 16, 1979, Taylor failed to communicate with the bank for six years, and on April 26, 1985, Taylor filed a complaint against the bank seeking an "Order Directing Turnover of Property." *Id.*, at 605-06. After the co-trustee's bankruptcy law arguments were decided in favor of Taylor, they argued "that Taylor's claim is barred by an undisclosed state statute of limitations, or laches." *Id.*, at 607. The court stated that "in the absence of his denial or repudiation of the trust, *which must be communicated to the beneficiary,* a fiduciary cannot assert the bar of the statute of limitations or laches against the trust beneficiary." *Id.*, at 608 (citation omitted) (emphasis added). "Therefore, because Taylor is vested with title to Wiglesworth's bankruptcy assets under [the bankruptcy laws] and the co-trustees gave him *no notice of their alleged denial or repudiation* of the testamentary trust, the co-trustees *cannot assert the defense of ... a statute of limitations* against Taylor." *Id.* (emphasis added).

It is therefore the opinion of this Court that defense counsel's Motion for Reconsideration should be denied.